UNITED STATES of America, Plaintiff-Appellee,

v.

Pedro Miguel CRISTANCHO-PUERTO, Defendant-Appellant.

No. 72-2511
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Jan. 10, 1973.

Rehearing Denied April 18, 1973.

* Rule 18, 5 Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

J. V. Eskenazi, Federal Public Defender, Miami, Fla. (Court appointed but not under ACT, Charlene H. Sorrentino, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., William R. Northcutt, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellant, Pedro Miguel Cristancho-Puerto, who is a citizen of Colombia, brings this appeal from a judgment convicting him of having violated 21 U.S.C. §§ 841(a)(1) and 952(a) by illegally importing cocaine and by possessing cocaine with intent to distribute. The sole issue before us is whether the trial

court erred in denying appellant's motion to suppress evidence of the cocaine and statements made in connection with its seizure. We hold that the evidence was properly admitted.

On May 18, 1972, appellant arrived at Miami International Airport aboard a flight from Bogota, Colombia. When appellant reported for immigration inspection, the immigration officials became suspicious of the authenticity of his travel documents. Appellant was taken before a secondary immigration inspector, who advised him that because of the questions regarding his papers, he would have to choose either (1) to withdraw his application for admission and voluntarily return to Colombia, or (2) to continue seeking admission to the United States with the knowledge that immigration officials were suspicious about his compliance with the entry laws. Appellant chose the latter course of action. He was then taken into custody, warned of his rights, and searched —but no contraband was discovered.

Appellant was held overnight at an office of the I.B.I. Security Agency and his luggage was placed with I.B.I. for storage. The next day, Friday, May 19, 1972, after further investigations and interviews had been completed, appellant was arrested, charged with violating 18 U.S.C. § 1546 (fraudulent entry documents), searched, and placed in the Dade County Jail. On Monday, May 22, 1972, appellant was taken before a United States Magistrate, who advised him of his rights and set bond. Appellant was returned to the Dade County Jail, where he was again searched.

On May 25, 1972, a Special Agent with the Bureau of Narcotic and Dangerous Drugs allegedly received a confidential informant's tip that appellant was boasting to his jail-mates that he had cocaine in his possession that had not been discovered despite the many searches. The Special Agent notified the Immigration and Naturalization Service, then went to the jail with agents from the INS and from the United States Customs Bureau. Appellant was taken to an interrogation room where all three federal agents interviewed him.

After appellant had been warned of his rights, the Customs Bureau Agent asked him, "Will you take off your shoes?" Appellant replied, "Of course," and did so. The agents immediately examined the shoes and found a substance later identified as cocaine concealed in the soles. A subsequent search of the luggage stored at I.B.I. led to the discovery of additional cocaine hidden in the soles of shoes in appellant's suitcase. It is stipulated that no warrants were sought or obtained for either search.

Appellant was indicted on June 15, 1972, for the cocaine violations. His motion to suppress was denied following an evidentiary hearing, and a jury subsequently found him guilty on both counts. Appellant was sentenced to serve eight years imprisonment on each count, the sentences to be served concurrently.

■ Appellant appeals solely on the ground that the motion to suppress evidence should have been granted. Appellant correctly premises his argument on the settled principle of law that where a search is conducted without a warrant, "[t]he burden is upon the government to show that the search fell within one of the exceptions to the Fourth Amendment requirement of a warrant." Brett v. United States, 5 Cir. 1969, 412 F.2d 401, 405; Barnett v. United States, 5 Cir. 1967, 384 F.2d 848. Although in denying the motion to suppress the evidence the trial judge failed to state which exception he thought was applicable,[1] we find that this search was

---

1. Theories mentioned in the briefs on appeal are: (1) border search; (2) "alien-status" search; (3) customs search, see 19 U.S.C. § 1595(a); (4) search by consent, compare Perkins v. Henderson, 5 Cir. 1969, 418 F.2d 441, with United States v. Resnick, 5 Cir. 1972, 455 F.2d 1127; and (5) prison search. We should not be understood as having in any way considered any exception to the Fourth Amendment warrant requirement other than that discussed in the body of this opinion.

justified under a particularly narrow category of border searches.

We think it clear that appellant had not been fully "admitted" into the United States and that his legal status at the time of the search was that of a man "standing at the border." Appellant was indeed taken past the physical border, but he was brought across that visible boundary only by virtue of his being placed in "deferred inspection parole status."

 8 U.S.C. § 1182(d)(5) states as follows:

"The Attorney General may in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, *but such parole of such alien shall not be regarded as an admission of the alien* and when the purposes of such parole shall, in the opinion of the Attorney General have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." (emphasis added)

On the precise facts of this case, we find this statute to be dispositive. We are not dealing here with an alien who has been placed in deferred inspection parole status and then allowed to remain either at liberty or at large. Rather, we hold only that an alien who is brought into the country under the provisions of this law and who is being held in physical custody by entry officials, having never for a moment been allowed to move about free of custody, continues to stand at the border for customs and border search purposes. Nor do we suggest that his special legal status could be continued indefinitely. If the entry officials allow the alien to remain at large pending investigation under the statute, the alien would not remain at the door.

Similarly, if a criminal trial begins against the alien, he would not be "at the door" because the government at that point would no longer be holding the alien *pending* some future action. Finally, we do not mean to imply that there could never be a period of time for which an alien is held under the statute that would be too long to be reasonable. Here, appellant was searched one week after his physical entry into the country. Because the search occurred only one week later, at a time when the alien had been held in continuous physical custody by entry officials, pending prosecution and pursuant to section 1182(d)(5), we hold that the search was a border search. As such, the search was proper, 19 U.S.C. § 482, and the evidence obtained thereby was introducible against appellant.

Affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

SIMPSON, Circuit Judge, with whom GODBOLD, Circuit Judge, joins (dissenting):

I respectfully dissent from the refusal to reconsider the panel opinion by the Court en banc. I think the panel opinion makes an unwarranted applica-

tion of the border search doctrine to this case.

At the outset, the statutory argument by which the appellant was defined as a person "standing at the border" creates difficulties. I question the use of a statute which defines the status of a person for entry purposes under the immigration law being used as sole authority for conducting a border search. Title 19, U.S.C., Section 482, the statutory authority under which border searches are conducted, designates a border crossing rather than the legal status of a person as the event giving rise to the authority to conduct a border search. Alexander v. United States, 9 Cir. 1966, 362 F.2d 379, cert. denied 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439. It is clear however that at some point a person becomes fully admitted to the United States and may no longer be subjected to a border search, cf. Carroll v. United States, 1925, 267 U.S. 132, 134, 45 S.Ct. 280, 69 L.Ed. 543. The border or "extended border" has uniformly heretofore been defined in terms of physical distance or geographical travel time from the actual border, and authority to conduct border searches has been made dependent upon traditional border search or extended border search analysis.

Despite the fact that they may be illegal entrants into the United States, aliens as well as citizens enjoy Fourth Amendment protection, cf. Au Yi Lau v. United States Immigration and Naturalization Service, 1971, 144 U.S.App.D.C. 147, 445 F.2d 217, 223. In my view the panel opinion creates a precedent fraught with dangerous implications that the validity of warrantless searches of aliens may in the future be made to depend upon administrative classifications of status made by the Bureau of Immigration and Naturalization.

Further the panel opinion approves the introduction of evidence which was the fruit of a warrantless search of the appellant's clothing in the jail property room. Title 8, U.S.C., Section 1182(d)(5), which is relied on to place the appellant in "deferred inspection parole status" applies facially to persons and not to baggage and personal effects. It is unclear to me how this "deferred inspection parole status" can apply to baggage and personal effects that the appellant was incapable of reaching because of his incarceration. Even if Cristancho-Puerto was "standing at the border" he was still entitled to a separate and distinguishable Fourth Amendment right to the security of his clothing in the jail property room. Brett v. United States, 5 Cir. 1969, 412 F.2d 401, so holds for this Court. A warrantless search must fall within one of the narrow "jealously and carefully drawn" exceptions to the Fourth Amendment. Jones v. United States, 1960, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514. An immigration statute which defines status is not in my judgment a valid basis for engrafting an additional exception upon the warrant requirement of the Fourth Amendment.

A search must be reasonable under the Fourth Amendment. Ker v. California, 1963, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726. Simply classifying this search as a border search is not a ground for obviating inquiry into the surrounding circumstances to determine reasonableness. Even absent the normal requirements of a search warrant for the existence of probable cause, border searches still must be reasonable under Fourth Amendment imperatives. United States v. Hill, 5 Cir. 1970, 430 F.2d 129, 130; Henderson v. United States, 9 Cir. 1967, 390 F.2d 805. The particular search here of course does not comport with the historical origin and justification for an "extended border search"— a border search occurring at some point of time other than an actual border crossing. Cf. United States v. Glaziou, 2 Cir. 1968, 402 F.2d 8, 13–14, Note 3. Ordinarily the justification for an "extended border search" is that individuals who have recently crossed a border or who have been in a border area may elude customs officials because of high mobility. Glaziou, supra. But in this case the appellant was in custody and

government agents had ample opportunity to secure a warrant if the informer's tip was reliable and sufficient to constitute probable cause. Border searches occurring at some point after an initial border crossing usually involve considerations of both distance and time from the initial crossing. Alexander v. United States, supra. No other case which I have found sanctions a border search conducted *eight days* after entry into the United States.

Neither the panel opinion nor the briefs make clear the actual reason for the appellant's incarceration at the time of the search when the cocaine was discovered. The opinion (see slip opinion, pages 2 and 3) states that appellant was charged with violating Title 18, U.S.C., Section 1546 (possession of fraudulent entry documents), arraigned before a United States Magistrate on that charge, searched and jailed, being searched both at the time of the arrest and at the time of his return to jail following arraignment. These searches were unproductive. If Cristancho-Puerto was at the time of the search which located the cocaine incarcerated under the Section 1546 charge, his status on "deferred inspection parole" was seriously diluted if not completely destroyed. The petition for rehearing asserts that his remaining in jail was solely by reason of his inability to post a $2500.00 bail bond on the Section 1546 charge. If this contention is true it negates his status as a man "standing at the border" and therefore subject to a border search within the scope of the panel opinion. It also raises a question suggested in the petition for rehearing that he was discriminated against solely by reason of indigency. See Tate v. Short, 1971, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130; Williams v. Illinois, 1970, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586. It deeply disturbs me that this panel opinion says for our Court that the United States can arrest a man and charge him with a crime but still have the benefit of conducting warrantless searches of his person and effects because he is "standing at the border". The two concepts are contradictory. The panel opinion recognized this dilemma by saying that a man would no longer be "standing at the border" if a criminal trial begins against him. I suggest that the initiation of criminal proceedings by arrest and arraignment is more logically the appropriate time for an alien to cease "standing at the border".

Granted that the expansion of the border search doctrine approved by the panel opinion is narrowly framed, I think that the problems it raises are of sufficient gravity to warrant en banc re-examination.

For these reasons I dissent.