UNITED STATES of America,
Plaintiff-Appellee,

v.

Sherry Marie LILLY,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Merrilyn M. GALLEGOS,
Defendant-Appellant.

Nos. 77–5468, 77–5533.

United States Court of Appeals,
Fifth Circuit.

July 24, 1978.

---

W. Wallace Brady, Fort Worth, Tex. (Court-appointed), for defendant-appellant in No. 77–5468.

Anne M. Srebro, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee in No. 77–5468.

R. David Broiles, Fort Worth, Tex. (Court-appointed), Grace B. Hopkins, Fort Worth, Tex., for defendant-appellant in No. 77–5533.

Kenneth J. Mighell, U. S. Atty., Fort Worth, Tex., Shirley Baccus-Lobel, R. H. Wallace, Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee in Nos. 77–546 and 77–5533.

Before THORNBERRY, RONEY and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

The case on appeal raises the question of the legal validity of body cavity searches conducted on federal inmates when they return to prison after unsupervised absences. Defendants-appellants Merrilyn M. Gallegos and Sherry Marie Lilly were inmates at the federal correctional institution (F.C.I.) at Fort Worth, Texas. In unrelated incidents, prison officials discovered both defendants attempting to smuggle contraband into prison in a body cavity. Each defendant subsequently gave a statement to an FBI agent concerning the attempted smuggling. Before their respective trials, each defendant filed a motion to suppress the contraband seized from her and the statement she had given to the FBI agent. The district court overruled each defendant's motion, and in separate trials, both defendants were convicted of attempting to smuggle contraband into a federal correctional institution, in violation of 18 U.S.C. § 1791. Each defendant appealed the rea-

sonableness of a body cavity search on the facts of her case and the validity of her subsequent statement.[1] Although the defendants' smuggling attempts were unrelated and the defendants were tried separately, their appeals were consolidated for argument before this court because the issues raised are similar. We reverse defendant Gallegos' conviction on the ground that the seizure in her case was unreasonable, thereby rendering inadmissible the contraband seized from her and her statement to the FBI agent. We affirmed defendant Lilly's conviction.

### I. Defendant Gallegos.

At the F.C.I., defendant Gallegos was housed in the Drug Abuse Program Unit, a treatment facility for inmates with past drug problems. After applying for and receiving an educational grant, defendant Gallegos was permitted to attend a local beauty college. While the defendant was attending school and during part of her daily trip to and from the prison, she was neither supervised nor observed by any prison official. Additionally, the defendant had her own room at the prison and a key to her door.

When the defendant returned to prison from school on the evening of December 17, 1976, she was taken to the prison clinic and was told that a body cavity search would be conducted on her. The record does not reflect why the prison officials decided to search the defendant. They apparently had no reason to suspect that she actually was hiding contraband in a body cavity. When the defendant refused to submit to the body cavity search, she was placed in administrative detention. After two days of constant observation of the defendant, she was told that a body cavity search would be performed on her, and she was taken to the prison clinic for that purpose. Before the defendant undressed, the female nurse who was going to conduct the search offered to let the defendant remove the contraband. The defendant then removed from her vagi-

---

1. Defendant Gallegos also argues that her rights under the Speedy Trial Act were violated. Our disposition of her case renders consideration of this argument unnecessary.

na a plastic bag containing marijuana. She was returned to administrative detention, and on December 22, she gave a statement concerning the attempted smuggling to an FBI agent.

■ Because the seizure of contraband from the defendant resulted from the threat of the impending body cavity search, the legal validity of the seizure depends on the legal validity of the impending search. Therefore, we must first determine whether a person retains any constitutional rights when he is incarcerated. A prisoner undoubtedly forfeits many of his constitutional rights. In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), however, the Supreme Court stated that although a prisoner's "rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." 418 U.S. at 555, 94 S.Ct. at 2974. It is now settled law, therefore, that a prisoner loses only those rights that must be sacrificed to serve legitimate penological needs. *E. g., Newman v. Alabama*, 559 F.2d 283, 286–87 (5th Cir. 1977); *Sostre v. Preiser*, 519 F.2d 763, 764 (2d Cir. 1975); *Bonner v. Coughlin*, 517 F.2d 1311, 1315 (7th Cir. 1975); *United States v. Savage*, 482 F.2d 1371, 1372 (9th Cir. 1973), *cert. denied*, 415 U.S. 932, 94 S.Ct. 1446, 39 L.Ed.2d 491 (1974).

■ Given that prisoners retain some measure of those constitutional rights they enjoyed as unincarcerated members of society, the question becomes whether a prisoner retains any measure of his fourth amendment protection. The government needs neither a warrant nor probable cause to conduct a search or seizure in the prison context because of prisoners' decreased expectations of privacy and because of the exigencies inherent in the prison environment. *United States v. Stumes*, 549 F.2d 831, 832 (8th Cir. 1977); *Daughtery v. Harris*, 476 F.2d 292, 294 (10th Cir.), *cert. denied*, 414 U.S. 872, 94 S.Ct. 112, 38 L.Ed.2d 91 (1973); *United States v. Cristancho-Puerto*, 475 F.2d 1025, 1027 n.1 (5th Cir.), *cert. denied*, 414 U.S. 869, 94 S.Ct. 181, 38

L.Ed.2d 115 (1973). The history and purpose underlying the fourth amendment, however, require that prisoners retain at least some degree of their fourth amendment protection. The fourth amendment was adopted in reaction to the issuance of general warrants that gave government agents unfettered discretion to conduct searches and to seize property, thereby placing " 'the liberty of every man in the hands of every petty officer.' " *Boyd v. United States*, 116 U.S. 616, 625, 6 S.Ct. 524, 529, 29 L.Ed. 746 (1886). To protect individuals from illegal invasions of the sanctity of their "persons, houses, papers, and effects," courts broadly construe the fourth amendment to prevent any unjustified encroachment on the fundamental right stated therein. *Coolidge v. New Hampshire*, 403 U.S. 443, 454 n.4, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Boyd v. United States, supra*, 116 U.S. at 635, 6 S.Ct. 524. Denial of any fourth amendment protection to a prisoner potentially would subject him to any form of search and seizure, no matter how abusive or intrusive, conducted at the hands of any prison employee who is so inclined, provided only that the search and seizure do not rise to the level of cruel and unusual punishment. *See* P. Giannelli & F. Gilligan, Prison Searches and Seizures: "Locking" the Fourth Amendment out of Correctional Facilities, 62 Va.L.R. 1045, 1050–52 (1976). We cannot tolerate this result, which potentially would flow from a holding that prisoners retain no part of their fourth amendment protection. Therefore, as the fourth amendment mandates, searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed. *Accord, Sostre v. Preiser*, 519 F.2d 763, 764–65 (2d Cir. 1975); *Bonner v. Coughlin*, 517 F.2d 1311, 1317 (7th Cir. 1975); *United States v. Savage*, 482 F.2d 1371, 1372–73 (9th Cir. 1973), *cert. denied*, 415 U.S. 932, 94 S.Ct. 1446, 39 L.Ed.2d 491 (1974).

■ It has been suggested that because a warrant is not required to conduct a search or seizure in prison, the government should not bear the burden of proving the reasona-

bleness of the search or seizure. Historically, the government has borne the burden of justifying any search or seizure conducted by a government agent. The burden has been thus placed in recognition of the fact that the fourth amendment does not *confer* the right to be free from unreasonable searches or seizures. The fourth amendment merely restates a fundamental right that was recognized at common law. *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886).[2] Thus, whenever the government has invaded an individual's privacy, the government has been required to justify its invasion by proving that it was reasonable under all the facts and circumstances. In this way, a check is placed on government agents' actions.

The question remains whether an exception to this long-standing rule should be created when the government conducts a search or seizure in the prison context. This court stated in *United States v. Edwards,* 441 F.2d 749, 753 (5th Cir. 1971), "Of course, any search without a warrant places upon the Government the burden to convince the court that it was reasonable under all of the facts and circumstances." Although *Edwards* did not involve government action in a prison, the court's statement was unqualified. Additionally, it is settled that the government bears the burden of proving reasonableness in other situations in which neither a warrant nor probable cause are necessary to conduct a search and seizure, such as in border search cases. *See, e. g., United States v. Afanador,* 567 F.2d 1325 (5th Cir. 1978); *United States v. Himmelwright,* 551 F.2d 991 (5th Cir. 1977). Indeed, not only does precedent indicate that the government should bear the burden of proving reasonableness in the prison context, but an important practical consideration also militates in favor of this placement of the burden. The prison adminis-

tration is in a better position to prove reasonableness than a prisoner is in to prove unreasonableness. *Cohen v. Norris,* 300 F.2d 24, 32 (9th Cir. 1962). The government, for example, is better able to demonstrate the existence of legitimate institutional needs justifying a particular search than is the defendant able to prove the negative.

■ Once it has been determined that prisoners retain some residuum of their fourth amendment right, no reason exists to create an exception in the prison context to the general rule concerning the burden of proof. Although prison administrators' decisions and actions in the prison context are entitled to wide-ranging deference from the courts, courts still have the duty to ensure that those decisions and actions do not violate those fundamental rights retained by prisoners, however restricted those rights may be. *See Newman v. Alabama,* 559 F.2d 283, 286–87 (5th Cir. 1977); *Wolfish v. Levi,* 439 F.Supp. 114, 124 (S.D.N.Y.1977). Therefore, although the burden of proving reasonableness is a light burden in the prison context, we hold that the government necessarily must carry this burden.

■■ Thus narrowed, the dispositive issue in the case on appeal is whether the Government carried its burden of proving the impending body cavity search of defendant Gallegos to be reasonable. It is settled law that the determination of reasonableness in any fourth amendment case depends on the particular facts of that case. To determine whether a particular search or seizure was reasonable, the court must balance the public interest in conducting the search against the individual's fourth amendment interest. *United States v. Martinez-Fuerte,* 428 U.S. 543, 555, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *United States v. Himmelwright,* 551 F.2d 991, 994 (5th Cir. 1977). The more intrusive is a particular search or seizure, the heavier is the govern-

2. In *Sostre v. Preiser,* 519 F.2d 763, 764 (2d Cir. 1975), the Second Circuit recognized that prisoners historically had no rights and were considered to be slaves of the state. As discussed in the text of this opinion, it is now accepted

law that prisoners retain those rights that are not inconsistent with "the needs and exigencies of the institutional environment." *Wolff v. McDonnell,* 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974).

ment's burden of proving the reasonableness of that search or seizure. *United States v. Afanador*, 567 F.2d 1325, 1328 (5th Cir. 1978).

Although few searches are more intrusive than a body cavity search, we do not hold that such searches are per se unreasonable. *Accord, Daughtery v. Harris*, 476 F.2d 292 (10th Cir.), *cert. denied*, 414 U.S. 872, 94 S.Ct. 112, 38 L.Ed.2d 91 (1973); *Bell v. Manson*, 427 F.Supp. 450 (D.Conn. 1976); *Hodges v. Klein*, 412 F.Supp. 896 (D.N.J.1976); *Penn El v. Riddle*, 399 F.Supp. 1059 (E.D.Va.1975); *cf. Frazier v. Ward*, 426 F.Supp. 1354 (N.D.N.Y.1977). They not only help stem the flow of contraband into, within, and out of prisons, but they also have a beneficial deterrent effect. *Bell v. Manson, supra* at 452. To prove the legal validity of a particular body cavity search, however, the government still must show that the search and seizure in question was reasonable under all the facts and circumstances. The relevant facts and circumstances will vary from case to case. In the prison context, however, the government always must show that a legitimate penological need necessitated the search, that the need could not have been satisfied by a more narrow means, *Sostre v. Preiser*, 519 F.2d 763, 764 (2d Cir. 1975), and that the search and any consequent seizure were conducted in a reasonable manner. Depending on the facts of a particular case, proof of certain other factors may be necessary to prove reasonableness.

In the case on appeal, the Government demonstrated its legitimate need for conducting body cavity searches. The Government showed the prison administration's obvious interest in preventing contraband from entering the prison. The prison administration has an especially strong interest in preventing contraband drugs and marijuana from entering the drug rehabilitation unit in which defendant Gallegos was housed. The Government also showed that substantial amounts of contraband were being smuggled into the prison in which the defendant was incarcerated despite frequent random strip searches that were con-

ducted on inmates returning from unsupervised absences. Therefore, it was reasonable for the prison administration to believe that inmates were smuggling contraband into the prison in their body cavities. Finally, the record reflects that the search would have been, and the seizure was, conducted in a reasonable manner.

Although the Government showed its legitimate need for body cavity searches and the reasonableness of the means for conducting such searches, we hold that the seizure of contraband from defendant Gallegos was unreasonable because she was given no notice that her voluntary absences from the prison potentially would subject her to completely random body cavity searches. The record reflects that random strip searches regularly were conducted on inmates returning from unsupervised absences, including defendant Gallegos on several occasions. It does not appear from the record, however, that random body cavity searches previously had been conducted or that the defendant had any other form of notice that she might be subjected to random body cavity searches.

Notice is an essential element of reasonableness on the facts of the case on appeal because body cavity searches are highly intrusive and humiliating and, therefore, must be surrounded by those reasonable protections that do not conflict with legitimate penological needs. *See Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); *Sostre v. Preiser*, 519 F.2d 763, 764 (2d Cir. 1975). If a prisoner has a choice of actions, one of which subjects him to the possibility of a random body cavity search, the prisoner should have some form of notice concerning the existence of that possibility. Although we expressly do not decide this question, a valid prison regulation dealing with random body cavity searches may serve as sufficient notice. *See generally, Guy v. McCauley*, 385 F.Supp. 193, 200–01 (E.D.Wis.1974). Therefore, our decision would have been different if the Government had shown the existence of some form of notice, as well as the existence of a legitimate institutional need

for the body cavity search and of reasonable procedures for conducting the search. We do not hold, however, that notice is an essential element of reasonableness in every fact situation.

■ Because we hold that the seizure of contraband from defendant Gallegos was unreasonable and that the contraband should have been suppressed, we also hold that her statement to the FBI agent concerning the attempted smuggling should have been suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The contraband and the statement constituted the only evidence of the defendant's commission of the offense. Therefore, her conviction is reversed.

## II. *Defendant Lilly.*

On Friday, January 21, 1977, defendant Lilly left the F.C.I. on a voluntary weekend furlough. While the defendant was on furlough, two or three persons within the prison told a prison correctional supervisor that defendant Lilly had bragged that she had smuggled marijuana into the prison after her last furlough. On the basis of this information, the correctional supervisor sought, and received, authorization from the warden to conduct a body cavity search on the defendant when she returned to the prison.

When the defendant returned to the prison, she was initially strip searched. When this search did not uncover any contraband, a female medical officer conducted a body cavity search on the defendant. The search revealed a foreign matter in the defendant's rectum, which the defendant removed. It was a cellophane envelope containing marijuana and a quaalude pill. Five days later, the defendant waived her *Miranda* rights and gave a statement to an FBI agent, in which she admitted that she had placed the envelope in her rectum and that she previously had done so on three or four occasions.

■ As stated earlier in this opinion, the government bears the burden of proving the reasonableness of a body cavity search conducted on an inmate on prison grounds. As also stated, notice is not an essential element of reasonableness in every fact situation. Prior notice is unnecessary, for example, when prison officials have reason to believe that a particular prisoner is actually hiding contraband in a body cavity. In that situation, notice is unnecessary because the search is not random and is not directly triggered by an inmate's voluntary actions.

■ In the case on appeal, the warden determined, on the basis of information related by a correctional supervisor, that there existed sufficient reason to suspect that the defendant would attempt to smuggle contraband into the prison when she returned from her weekend furlough. We cannot hold that this was an abuse of the warden's discretion, *see Royal v. Clark,* 447 F.2d 501, 501–02 (5th Cir. 1971), or that it violated the defendant's fourth amendment right to be free from unreasonable searches and seizures. The prison administration has an extremely strong interest in preventing contraband from entering the prison. Additionally, the prison officials conducting the search attempted to minimize the intrusion on the defendant. The body cavity search was conducted only after a strip search failed to reveal any contraband. The body cavity search was conducted by a female medical officer in the prison clinic in the presence of only the medical officer and a female correctional officer. Therefore, the search and seizure were reasonable, and the district court properly admitted the contraband into evidence.

The defendant admits that if the search was legal, the statement given to the FBI agent also was legal. Our review of the record confirms that the defendant's statement was admissible. Therefore, defendant Lilly's conviction is affirmed.

REVERSED as to defendant Gallegos; AFFIRMED as to defendant Lilly.

THORNBERRY, Circuit Judge, specially concurring:

I concur specially in the result reached by the panel. I agree with the majority's well-

reasoned opinion that a prisoner retains some fourth amendment rights but that prison officials are not bound by warrant and probable cause requirements. I also agree that the issue in this case is the reasonableness of the two searches and that the government should bear the burden of showing that reasonableness. I believe, however, that in the case of appellant Gallegos, there is a far more compelling reason for holding the body cavity search to which she was subject unreasonable. Gallegos contended, and the government did not dispute, that she was held in administrative detention for several days prior to the body cavity search. She was placed in the solitary confinement cell after she initially refused to consent to the body cavity search. When she arrived at the cell she was required to do three "deep knee bends" and "spread". During the time that she was confined she was allowed to wear only a T–shirt, the light remained constantly on in the cell, and she was guarded at all times. She was required to use the bathroom by squatting on a sheet and using a small pan. During her confinement she was visited by authorities who strenuously urged that she consent to the search. When the authorization for the body cavity search was received, five persons, including two males, came to take Gallegos to the clinic. She was told that the non-medical, male officers would have to be present in the room during the cavity search. At this point she "consented" to the removal of the contraband.

The government argued that Gallegos had consented to the search and, alternatively, that her consent was immaterial because prison officials did not need it to perform the body cavity search. The voluntariness of a consent to search is to be judged by the totality of the circumstances. *Schneckloth v. Bustamontc,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). A consent must be the product of an essentially free and unconstrained choice of an individual whose will has not been overborne and whose capacity for self-determination has not been critically impaired. 412 U.S. at 227, 93 S.Ct. at 2047. In determining voluntariness the court has looked to the age of the accused, *Haley v. Ohio,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948), the length of the detention, *Chambers v. Florida,* 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1970), the repeated and prolonged nature of questioning, *Ashcraft v. Tennessee,* 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1944), and the use of physical punishment such as the deprivation of food or sleep. *Reck v. Pate,* 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961). Although no single aspect of Ms. Gallegos' confinement, standing alone, would be sufficient to destroy her consent, taken together the circumstances present a very troublesome picture. I would hold that the consent was invalid and that the search was invalid because it took place under circumstances that were so coercive that they were patently unreasonable.