UNITED STATES of America,
Plaintiff-Appellee,

v.

Sherry Marie LILLY,
Defendant-Appellant.

No. 77-5468.

United States Court of Appeals,
Fifth Circuit.

July 10, 1979.

Wallace Brady, Fort Worth, Tex. (Court-appointed), for defendant-appellant.

Anne M. Srebro, Shirley Baccus-Lobel, Asst. U. S. Attys., Dallas, Tex., Victor D. Stone, Atty., Appellate Section, Crim. Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

## ON PETITION FOR REHEARING

Before THORNBERRY, RONEY and HILL, Circuit Judges.

PER CURIAM:

In defendant Lilly's Petition for Rehearing, she maintains that the Government's Brief on Appeal and, in turn, our prior opinion [1] misapprehended a fact in stating when the correctional supervisor learned of Lilly's prior smuggling of contraband into the prison. The Warden's authorization for the body cavity search was sought and obtained after Lilly left on furlough on Friday, January 21. Her prior introduction of contraband occurred a few days earlier, on January 17. Lilly argues that the correctional supervisor learned of the prior introduction of contraband before Lilly was released on furlough on January 21, and she urges that this fact should change our result.

The correctional supervisor's testimony demonstrated that Lilly had enjoyed a furlough on January 17, had smuggled contraband into the prison upon her return, and had related this successful venture to others. He learned of her success from "[t]wo or three different sources, but it virtually became common knowledge." He testified that "the next time that she went out [he] felt that it would be necessary to check her when she came back more thoroughly than just a visual checkout as we call it—an inspection." The reference to "the next

---

1. *United States v. Lilly*, 576 F.2d 1240, 1246 (5th Cir. 1978).

time that she went out" may accord with the interpretation urged by Lilly. However, the correctional supervisor may have meant that, on the basis of information received, he felt justified in seeking authorization for a body cavity search at the time when she again was on furlough and thus in a position to again smuggle contraband. Understandably, the point of timing was not pursued before the District Court.

In any event, we cannot regard this point as controlling. In our view, the reasonableness of the body cavity search of Lilly does not depend upon when the correctional supervisor learned of her prior introduction of contraband, nor does our prior opinion suggest that it does. In support of the contention that Lilly should have received prior notice of the possibility of a body cavity search, she cites the following language from our opinion:

> If a prisoner has a choice of actions, one of which subjects him to the possibility of a random body cavity search, the prisoner should have some form of notice concerning the existence of that possibility.

*United States v. Lilly,* 576 F.2d at 1246. However, this search plainly was *not* a *random* body cavity search. Our prior opinion clearly makes this distinction. *Id.* at 1247–48. The search of Lilly was predicated upon and justified by the information of her prior abuse of furlough privileges which had resulted in her successful introduction of contraband into the prison. There was, accordingly, an entirely reasonable basis underlying the decision to conduct a body cavity search on this inmate. To suggest, as Lilly does, that one in her position must be warned of the consequences of contemplated wrongdoing imposes an unreasonable standard. We reasoned that prior notice of the possibility of a body cavity search is necessary in order to justify a random body cavity search conducted for the general and quite legitimate purpose of controlling the influx of contraband into a prison. *Id.* at 1246–47. However, this procedure is unnecessary when the intrusion is predicated upon specific information related to the individual inmate. Here, there was information that Lilly had recently smuggled contraband into the prison. *Id.* at 1247. A prudent correctional supervisor would quite reasonably conclude that she would attempt to do so again. To hold that the Fourth Amendment precludes the official response here, which was clearly warranted by the situation, would obstruct the legitimate demands of the correctional environment. We have held that the Fourth Amendment applies in the prison context, and that it imposes a standard of reasonableness in this regard. The body cavity search conducted here was reasonable. Indeed, it would have been unreasonable, in light of the information possessed, to have failed to take those measures calculated to prevent another introduction of contraband into the F.C.I. As we held, notice is *not* "an essential element of reasonableness in every fact situation" involving a body cavity search upon an inmate returning from an unsupervised absence. *Id.* at 1247. Correctional officials must retain the latitude to act upon the kind of information presented by this case. The decision to conduct the body cavity search was warranted by the circumstances. It was manifestly reasonable. The search was conducted in a reasonable manner. The Fourth Amendment demands no more.

The Petition for Rehearing is DENIED.