Anthony DIGUISEPPE, Plaintiff,

v.

Benjamin WARD, Jack Czarnetzky, Eugene S. Lefevre, Robert K. Woods, Robert Labrum, Phillis Curry, and William Donahue, individually and in their official capacities, Defendants.

No. 78 Civ. 2844.

United States District Court,
S. D. New York.

May 18, 1981.

Mark H. Spires, Queens Legal Services Corp., Long Island City, N. Y., for plaintiff; Wayne G. Hawley, Eric G. Poulos, Jamaica, N. Y., of counsel.

Robert Abrams, Atty. Gen., State of New York, Fred Lieberman, Asst. Atty. Gen., New York City, for defendants; Patricia C. Armstrong, Asst. Atty. Gen., New York City, on brief.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

On August 8, 1977, while the plaintiff was an inmate there, a riot occurred at the Eastern New York Correctional Facility.[1] Two days later, in an effort to reinforce prison discipline and security, prison personnel searched the facility to uncover dangerous weapons or other contraband. While in plaintiff's cell, one of the persons conducting the search came across a personal diary belonging to plaintiff and leafed through its pages. His eye caught the date "August 8" (on which the riot had occurred) and, his interest aroused, he read the first page of the entry on which that date appeared.

---

1. There is no suggestion in the record that plaintiff was in any way responsible for or played any part in that riot.

The record does not suggest he read anything to indicate that plaintiff had committed or was about to commit an illegal or dangerous act, or that harm to anyone might be averted on the basis of information found in the rest of the diary. Nevertheless, the searcher took possession of the diary, and gave it to other prison officials, who subsequently reviewed its contents.

The question presented is whether this taking and reading of the diary violated the plaintiff's right of privacy as guaranteed by the Constitution. We conclude that it did.

### Discussion

We do not understand defendants to dispute the proposition that non-prisoners would have a protectible interest in the secrecy of a personal diary.· Moreover, it seems clear that any such argument would be unavailing. As Justice Brennan observed, concurring in the judgment in *Fisher v. United States* (1976) 425 U.S. 391, 427, 96 S.Ct. 1569, 1589, 48 L.Ed.2d 39:

> "[W]hile letters, being necessarily interpersonal, are not wholly private, their peculiarly private nature and the generally narrow extent of their disclosure would seem to render them within the scope of the [Fifth Amendment privilege which Brennan describes at 424 to extend only to such testimonial evidence as to which "the individual resisting production had a reasonable expectation of privacy"]. *Papers in the nature of a personal diary are a fortiori protected under the privilege.* (Emphasis supplied.)

See also *United States v. Bennett* (2d Cir. 1969) 409 F.2d 888, 897.[2]

The question before us, however, is whether that interest survives in a prison setting. In this connection, we have recently been reminded that " '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' " *Bell v. Wolfish* (1979) 441 U.S. 520, 545–56, 99 S.Ct. 1861, 1877–1883, 60 L.Ed.2d 447.

The Supreme Court has also held, however, that "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." *Wolff v. McDonnell* (1974) 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935. In *Wolff*, Justice White, writing for a unanimous Court, observed that among the rights which prisoners had theretofore been held to enjoy were the right to substantial religious freedom under the First and Fourteenth Amendments, the right of access to the courts, the right to protection from invidious discrimination based on race, and the right not to be deprived of life, liberty or property without due process of law. *Id.*

To date, the Supreme Court has not extended this list to include such key components of the right to privacy as protection from unreasonable searches and seizures. However, in *Bonner v. Coughlin* (7th Cir. 1975) 517 F.2d 1311, 1316, *reh. en banc* 545 F.2d 565 (1976), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978), the Seventh Circuit squarely held that some quantum of Fourth Amendment protection survives in the prison setting. In that case Judge (now Justice) Stevens observed (517 F.2d at 1316):

> "Unquestionably, entry into a controlled environment entails a dramatic loss of privacy. Moreover, the justifiable reasons for invading an inmate's privacy are both obvious and easily established. *We are persuaded, however, that the surrender of privacy is not total* and that some residuum meriting the protection of the Fourth Amendment survives the transfer into custody." (Emphasis supplied.)

The courts which have since confronted the issue have come to the same conclusion.

---

2. In the case cited, Judge Friendly observes (409 F.2d at 897):

"The reason why we shrink from allowing a personal diary to be the object of a search is that the entire diary must be read to discover whether there are incriminating entries; most of us would feel rather differently with respect to a 'diary' whose cover page bore the title 'Robberies I Have Performed'."

*United States v. Lilly* (5th Cir. 1978) 576 F.2d 1240, 1244; *United States v. Stumes* (8th Cir. 1977) 549 F.2d 831, 832; *Hodges v. Klein* (D.N.J.1976) 412 F.Supp. 896, 899. See also *Wolfish v. Levi* (2d Cir. 1978) 573 F.2d 118, 131, *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *United States v. Dawson* (9th Cir. 1975) 516 F.2d 796, 804–806, *cert. denied*, 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 80. We adopt these views, and conclude that the question before us is whether the reading of plaintiff's personal diary was reasonable in the particular prison setting in which it occurred.

In considering this question we are, again, guided by the Supreme Court's reminder in *Bell v. Wolfish* that the "considerations" underlying the penal system justify infringements on otherwise protected rights. In light of these considerations, various invasions of privacy are tolerated. See, e. g., *Bell v. Wolfish*, 441 U.S. at 557, 99 S.Ct. at 1883 (random room searches of pre-trial detainees do not infringe their right to privacy; drawers, beds and personal items may all be searched) and at 559, 99 S.Ct. at 1885 (prison authorities may reasonably conduct a strip search after every contact visit with a person from outside the institution). The common denominator in all of these situations, however, is that the invasion is necessary to—or at least helpful in—providing for the security of the prison or its inmates.[3]

Under the facts here stipulated, we can perceive no such justification. We begin with the proposition that it was proper to search for contraband, and we assume that it was necessary to leaf through the pages of plaintiffs diary to be sure that it contained no easily concealed contraband, such as razor blades. It was therefore virtually inevitable that the searcher's eye would catch isolated words and phrases. We further assume that if any isolated word or phrase thus observed gave rise to the reasonable expectation that the diary con-

tained information concerning imminent danger to inmate safety or prison security, it would be reasonable for the searcher to read on. However, we fail to see how observation of the date "August 8" could have given rise to any such reasonable expectation. The riot had been over for two days, and nothing seen by the searcher suggested danger to anyone.

Moreover, we are not impressed by defendants' contention that the searcher was justified in reading the diary because the date "August 8" gave rise to a "reasonable expectation" of securing evidence against the plaintiff for crimes committed during the riot. In the first place, it is not entirely clear that absent a warrant, or at least probable cause, such a purpose would suffice. The cases holding that no warrant is necessary to search a prison cell, *Bell v. Wolfish, supra*, 441 U.S. at 557, 99 S.Ct. at 1883; *United States v. Lilly, supra*, 576 F.2d at 1244; *United States v. Stumes, supra*, 549 F.2d at 832, are not here applicable. Their rationale lies in the perception that a prisoner neither has nor should have any expectation of privacy in his cell. We believe that prisoners both have and should have such an expectation in the contents of a personal diary. Certainly the diary of a prisoner is no less private in nature than that of a non-prisoner. It is probably, and deservedly, more so. As Justice Stewart observed in *Lanza v. New York* (1962) 370 U.S. 139, at 143–44, 82 S.Ct. 1218, at 1220–21, 8 L.Ed.2d 384:

> "[I]t may be assumed that even in jail, *or perhaps especially there*, the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection . . . ." (Emphasis supplied.)

In the second place, we fail to see how a "reasonable expectation" of securing evidence could have arisen in the circumstances of this case. Defendants have at no time pointed to any fact beyond plaintiff's mere presence in the institution on the date of

---

**3.** Maintaining proper prison discipline is, of course, necessary to prison security.

the riot, which would have created a suspicion that plaintiff had then committed a crime. The date "August 8" could not reasonably have been construed to create such suspicion. There is nothing curious in the circumstance that an individual who was keeping a diary had made an entry detailing such an unusual event as a riot. It follows that no inference of criminal activity may fairly be drawn from the mere fact of the entry.

The unconsented reading of plaintiff's personal diary by state correction employees having been justified by neither special considerations peculiar to the penal system, nor a reasonable expectation of securing evidence of criminal activity by the plaintiff, we conclude that such reading was unreasonable within the meaning of the Fourth Amendment.[4]

Plaintiff's motion for partial summary judgment is granted and defendant's cross-motion is denied. Defendant's motion to dismiss as to defendants Ward, Lefevre and Woods in their individual capacities is denied without prejudice to renewal after plaintiff completes discovery into their individual involvement in this incident.[5]

So ordered.

---

4. Having found no such "reasonable expectation" we need express no view as to whether such expectations would, without more, have justified the reading of plaintiff's diary.

5. At oral argument it was suggested that the parties might be able to stipulate damages contingent upon an affirmance of our ruling as to liability. Should such a stipulation be forth-

coming we will certify this question to the Court of Appeals pursuant to 28 U.S.C. § 1292(b). In the alternative, final judgment can be entered for plaintiff in the stipulated amount on the understanding that should the case for any reason be remanded all parties would be relieved of their stipulation as to damages.