400 So.2d 1008 (1981)
Jose VERA, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-1316.
District Court of Appeal of Florida, Third District.
June 23, 1981.
*1009 Bennett H. Brummer, Public Defender and Elliot H. Scherker, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Anthony C. Musto, Asst. Atty. Gen., and Joseph Corey, Legal Intern, for appellee.
Before HENDRY, NESBITT and BASKIN, JJ.
HENDRY, Judge.
Appellant Jose Vera challenges the circuit court's denial of his motion to suppress evidence seized from his person following a body cavity search.
Appellant, an inmate at Dade Correctional Institution, was assigned to a work detail with the Department of Transportation. On the afternoon of December 28, 1978, prison officials received information from a confidential source within the prison that appellant and another unidentified inmate on the work detail would bring marijuana into the prison concealed in their anal cavities. Based on this tip, prison officials obtained permission from the prison superintendent to search appellant and the other inmates on the work detail.
Upon his return to the prison, appellant was subjected to a body cavity search in the prison clinic by a state-certified emergency medical technician employed by the facility. Digital and anoscope examinations performed on appellant revealed the presence of a foreign object. An enema was then administered to appellant and he was ordered to sit on a bucket. A short time later, a packet containing marijuana was recovered.
Appellant was subsequently charged with introduction of contraband into a correctional facility and possession of marijuana with intent to sell or deliver. At a pretrial hearing, appellant moved to suppress the evidence seized. After this motion was denied, appellant pled no contest to the charges, reserving his right to appeal the denial of his motion.
Appellant contends on appeal that the search violated his reasonable expectation of privacy guaranteed by the Fourth and Fourteenth Amendments. Accordingly, this case addresses the legality vel non of a body cavity search of an inmate based upon information received from a confidential source that the inmate intended to smuggle contraband into the prison. Because this precise issue has not been previously addressed by the courts of this state, federal law and the law of other jurisdictions will be examined.
To determine whether appellant's reasonable expectation of privacy was violated by the search, we must first ascertain the extent of constitutional rights retained by a prisoner. Internal security within a prison is a compelling governmental interest justifying restrictions on inmate privacy and related rights. Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); United States v. Lilly, 576 F.2d 1240 (5th Cir.1978). Thus, the scope of a prisoner's Fourth Amendment rights is narrowed to accommodate institutional objectives. Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Marra v. State, 341 So.2d 284 (Fla.1st DCA 1977). See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). As a result of the decreased expectation of privacy by inmates and the exigencies inherent in a prison environment, United States v. Stumes, 549 F.2d 831 (8th Cir.1977), the government is not required to obtain a warrant or establish probable cause to conduct searches and seizures of inmates. United States v. Lilly, supra; Daughtery v. Harris, 476 F.2d 292 (10th Cir.), cert. denied, 414 U.S. 872, 94 S.Ct. 112, 38 L.Ed.2d 91 (1973). See generally Taylor v. State, 289 So.2d 421 (Fla.3d *1010 DCA 1974). Nonetheless, the Fourth Amendment does require that the searches and seizures conducted upon inmates be reasonable, Bell v. Wolfish, supra, and as with any warrantless search, the government has the burden of showing that the search was reasonable under all the facts and circumstances, even though this burden is lighter in the prison context. United States v. Lilly, supra.
Although body cavity searches present a serious invasion of prisoners' privacy rights, they are not per se unreasonable. United States v. Lilly, supra. Accord Daughtery v. Harris, supra, (rectal search of inmates at maximum security institution prior to court appearances reasonable in absence of showing of wanton conduct); Hodges v. Klein, 412 F. Supp. 896 (D.N.J. 1976) (rectal search of inmates upon leaving or entering the institution and following contact visits is reasonable). Rather, a determination of the reasonableness of such searches depends on the particular facts and requires a balancing of the need for the search against the invasion of personal rights which the search entails. Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).
In Bell, the United States Supreme Court upheld the reasonableness of visual body cavity inspections conducted on inmates in a pretrial detention center after every "contact" visit. In making this determination, the Court balanced four factors: (1) the scope of the intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted. Bell, supra, 441 U.S. at 559, 99 S.Ct. at 1884, 60 L.Ed.2d at 481. The controlling factor in the Court's decision was the unique security danger presented by the smuggling of drugs, money, weapons, and other contraband into detention facilities, despite the fact that on only one previous occasion was contraband discovered during a body cavity search at that particular facility.[1] After balancing the personal privacy interests of the inmates against the significant and legitimate security interest of the institution, the Court held that visual body cavity searches could be conducted on less than probable cause.
Applying the test promulgated in Bell, we conclude that under the particular facts and circumstances presented by this case, the search herein was reasonable. We observe that the factor of prison security considered significant in Bell is also of primary importance in the instant case. Admittedly, the search sub judice was not limited to a visual inspection and was, therefore, a more serious invasion than the search upheld in Bell. However, we find that the intrusiveness of the search is more than offset by the justification for initiating it. Given the important need within a prison facility to preserve internal order and discipline, maintain security, and rehabilitate prisoners, Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), we find that the information related to prison officials by a reliable[2] confidential source within the prison that the defendant would smuggle drugs into the facility provided prison officials with compelling justification to search appellant.[3] The record *1011 further establishes that the search herein was conducted in a reasonable fashion under proper medical conditions. The search lasted approximately forty-five minutes, and was performed in the emergency clinic of the prison by a licensed technician[4] using acceptable medical procedures, and methods not unduly harsh or oppressive.[5] Additional support for our holding also derives from the fact that courts have traditionally afforded prison administrators wide latitude in their adoption of the proper methods for maintaining order and discipline within the facility. Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); United States v. Lilly, supra; Daughtery v. Harris, 476 F.2d 292 (10th Cir.), cert. denied, 414 U.S. 872, 94 S.Ct. 112, 38 L.Ed.2d 91 (1973); Clark v. State, 395 So.2d 525 (Fla. 1981).
Upon careful review of the record, we conclude that the search and subsequent seizure in this case were within constitutional limits. In reaching this conclusion, we have balanced the dominant need to maintain prison security and prevent the distribution of drugs with the intrusion upon appellant's privacy. We have also considered the fact that the search was conducted in a non-abusive manner by a qualified paraprofessional in the relative privacy of the prison clinic. Our holding, however, is limited to the particular facts and circumstances of this case; we do not decide whether such a search would be reasonable in the absence of reliable information presenting a genuine threat to prison security.
On this basis, the trial court's order is affirmed.
Affirmed.
BASKIN, Judge (dissenting).
Although there is no question that prison security is a matter of the utmost importance, nowhere in American jurisprudence has the need for prison security justified dispensing with those human rights recognized in civilized societies. "[A] prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country." Wolff v. McDonnell, 418 U.S. 539, 555-56, 94 S.Ct. 2963, 41 L.Ed.2d 935, 950 (1974); see Marra v. State, 341 So.2d 284 (Fla.1st DCA 1977).
The majority opinion states its belief that the result sanctioned the "intrusiveness of the search." While body cavity searches are often mandated by the fact that body cavities are used to hide contraband, the method of conducting such a search is subject to standards which were not met in this case. For forty-five minutes to an hour appellant was subjected to an anoscope examination, a digital examination, an enema, another digital examination, and another enema. These procedures were not performed in the prison hospital but were conducted in a clinic, not by a doctor but by a medical technician, who acted in spite of the doctor's refusal to authorize the procedure. Appellant was forced to sit on a *1012 bucket to await the results of the enemas in the presence of correctional officers, who threatened to continue the "search" all night, if necessary.
Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) authorized a visual search conducted without probable cause; it recognized, however, that a search conducted in an abusive fashion could not be condoned. See United States v. Lilly, 576 F.2d 1240 (5th Cir.1978).
In my view, the methods used in this case constituted an unlawful intrusion. See Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); United States v. Cameron, 538 F.2d 254 (9th Cir.1976); Huguez v. United States, 406 F.2d 366 (9th Cir.1968).
For these reasons, I believe the evidence should have been suppressed.
NOTES
[1] The Court attributed this to the deterrent effect of the search rather than a lack of motivation on the part of the inmates to import contraband when given an opportunity.
[2] On two prior occasions, the confidential informant had provided prison officials with accurate information. Despite defense requests, the trial judge refused to require the state to reveal the identity of the confidential informant on the basis that his life would be endangered. The denial of this request has not been raised on appeal.
[3] See, e.g., United States v. Lilly, 576 F.2d 1240 (5th Cir.1978) (body cavity search conducted on female inmate upon her return from an unsupervised furlough pursuant to information received from other inmates was reasonable); People v. Valenzuela, 589 P.2d 71 (Colo. App. 1978) (body cavity search of prisoner returning from furlough held lawful based on confidential tip from another inmate that the defendant would attempt to smuggle contraband into the reformatory); cf. Frazier v. Ward, 426 F. Supp. 1354 (N.D.N.Y. 1977) (anal cavity searches routinely conducted upon inmates returning from prison visits and upon inmates with records of disciplinary problems without reasonable belief or indication of concealment violates the Fourth Amendment). See generally Marra v. State, 341 So.2d 284 (Fla.1st DCA 1977) (search of prisoner's personal locker for contraband by correctional officers acting on a tip but without a warrant and allegedly without exigent circumstances constitutional).
[4] The prison physician testified that the technicians are trained to perform anal examinations, and that a rectal search for contraband is not a medical procedure requiring his presence or permission. Also see Daughtery v. Harris, supra, (rectal examination is not medically dangerous as such and, therefore, professional expertise is not necessary to search for contraband, although such expertise is required when the examination is performed for diagnostic purposes).
[5] Compare with United States v. Cameron, 538 F.2d 254 (9th Cir.1976) (rectal cavity border search enduring the better part of one night violated Fourth Amendment where defendant was subjected to two forced digital probes, two enemas, and forced to drink liquid laxative over his continued protest that he was under medical supervision for stomach and rectal problems); and Huguez v. United States, 406 F.2d 366 (9th Cir.1968) (anal cavity search unreasonable where defendant subjected to a brutal, painful, and degrading "force process" in unsanitary surroundings).