816 F.2d 679
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Connie DIXON, Individually and as next friend to her son,
Donnie Dixon, a minor, Plaintiff-Appellee,
v.
Al C. PARKE, Warden; Lieutenant Cox; Marie Harper,
Correctional Officer; Richervill (or) Richardville;
Rosemary, Medical Personnel, KSP; and Patty Jones,
Correctional Officer, Defendants-Appellants.
 No. 86-5578.
 United States Court of Appeals, Sixth Circuit.
 April 3, 1987.
 
 Before ENGEL and GUY, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Connie Dixon, individually and as next friend to her son, Donnie Dixon, a minor, commenced an action in the United States District Court for the Western District of Kentucky pursuant to 42 U.S.C. Sec. 1983 and naming as defendants the several prison officials who are appellants here. Plaintiff claimed that she was subjected to a body cavity search and her son to a strip search on the occasion of their visit to the Kentucky State Penitentiary in Eddyville, Kentucky on or about April 12, 1982. They were at the prison to visit Donald Dixon, an inmate who is Connie's husband and the father of Donnie. The amended complaint alleges that the defendants required the searches as a condition for allowing the visit, that there was no justification for conducting the searches, that the body cavity search was done under unsanitary conditions, and that it entailed repeated and unnecessary body cavity probes. Plaintiff seeks damages and injunctive and declaratory relief.
 
 
 2
 Defendants appeal from the district court's denial of their motion to dismiss the complaint for damages on the basis of qualified immunity. This court has jurisdiction over the appeal under Mitchell v. Forsyth, 105 S. Ct. 2806 (1985). See Kennedy v. City of Cleveland, 797 F.2d 297 (6th Cir. 1986).
 
 
 3
 Two recent cases from other circuits address the issues in this case and provide a framework for deciding it. Bonitz v. Fair, 804 F.2d 164 (1st Cir. 1986), held that a search of prisoners violates the fourth amendment if it involves touching of body cavities and is done under unsanitary conditions and that this principle was well established by 1981. Thorne v. Jones, 765 F.2d 1270 (5th Cir. 1985), held that prison visitors have at least the same fourth amendment rights as prisoners. If we accept both these principles, and if we hold they were well established by April 1982, when the events in this case occurred, then we must deny defendants' immunity claim.
 
 
 4
 The prison in Thorne required consent to a body-cavity search as a condition for visiting an inmate. The plaintiff had undergone such a search in order to visit his son, and he sought damages because he was not suspected of carrying contraband. The court held that under the fourth amendment a prison visitor may be subjected to a body-cavity search only if there is a reasonable suspicion that he is carrying contraband. 765 F.2d at 1276. However, the court held the defendants immune from damages because this rule was not clearly established in 1981, when the visit took place. The only case that the court found that had stated the rule before then was a 1974 case from the Western District of New York. That case, the Fifth Circuit held, did not constitute clearly established law for the defendants in Thorne. Id. at 1277.
 
 
 5
 In March 1982, a month before the events in the present case, the Eighth Circuit adopted the reasonable suspicion rule for body-cavity searches of prison visitors. Hunter v. Auger, 672 F.2d 668, 674. We have found no other cases from other circuits or our own or from the district courts in Tennessee that adopted the rule before April 1982. In our view Hunter and the 1974 New York case did not establish law that should have been clear to the defendants at the time of the search in the present case. See Harlow v. Fitzgerald. 457 U.S. 800, 818 n.32 (1982) (cases from Supreme Court, courts of appeals, and local district court indicate the state of the law).
 
 
 6
 If prior cases have not pronounced the existence of a right in particular circumstances, a government official may still be held liable for violating the right if its existence is self-evident. See Mitchell v. Forsyth, 105 S. Ct. at 2820 n.12; Bonitz, 804 F.2d at 173 n.10. In order to see if the rights asserted here are self-evident, it is instructive to follow the analysis of Thorne,, which is the most thorough discussion by a court of the rights of prison visitors.
 
 
 7
 The court initially held that there is no first amendment right to prison visitation. Then the court considered the defendants' argument that the search was a consent search and that any search of a visitor is reasonable if he can leave rather than submit to the search. The court noted the fourth amendment standard for body-cavity searches of inmates:
 
 
 8
 the government always must show that a legitimate penological need necessitated the search, that the need could not have been satisfied by a more narrow means, and that the search and any consequent seizure were conducted in a reasonable manner.
 
 
 9
 765 F.2d at 1276 (quoting United States v. Lilly, 576 F.2d 1240, 1246 (5th Cir. 1978)). The court stated, "it would be anomalous indeed to accord [inmates] greater protection from unreasonable searches than [visitors]," and rejected defendants' argument. Thorne, 765 F.2d at 1276. If the argument is truly "anomalous," perhaps the plaintiff's rights in Thorne and the present case are self-evident.
 
 
 10
 It is not clear to us that the rule rejected in Thorne would give more protection to inmates than to visitors. A visitor would always be able to avoid a search by going home, and under Thorne the would-be visitor who chooses to go home does not relinquish a first amendment right. A prisoner, on the other hand, can be foreed to undergo a body-cavity search if the Lilly standards are met. As for the seeming paradox that a visitor can be searched on less suspicion than a prisoner, this difference in treatment would be consistent with the courts' extra scrutiny of a claim by the government that someone in custody has consented to a search. See Kamisar, LaFave & Israel, Modern Criminal Procedure, p. 429 (1980); Judd v. United States, 190 F.2d 649, 651 (D.C. Cir. 1951) (citing cases).
 
 
 11
 We neither reject nor accept the Fifth Circuit's conclusion that prison visitors have at least the same fourth amendment rights as prisoners. Rather, we hold that this conclusion is not self-evident and that these prison officials cannot be held personally responsible in money damages for not having reached it on their own in 1982. Nothing in our decision prevents the plaintiff from continuing her challenge in the district court of the grounds for requiring body searches or of the manner of such searches in her claims for injunctive and declaratory relief. On this we express no opinion.
 
 
 12
 Because plaintiff has not alleged a violation of clearly established rights, we REVERSE and REMAND to the district court with instructions to dismiss plaintiff's claims for the recovery of damages from individual appellants but without prejudice to her right to proceed on the remainder of her claim.