**James SIMS and Mary Cummins, Plaintiffs,**

**v.**

**David BRIERTON et al., Defendants.**

**No. 77 C 333.**

United States District Court, N. D. Illinois, E. D.

Nov. 7, 1980.

Gary H. Palm, Mandel Legal Aid Clinic, Chicago, Ill., for plaintiffs.

Victor Yipp, Illinois Dept. of Corrections, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff, an inmate at Stateville Correctional Center, moves for a protective order pursuant to this court's power over the discovery process under FRCP 26(c).[1] He seeks to prevent prison officials from conducting an anal cavity search before and after a law student visit to prepare his deposition and before and after his appearance within the prison at his deposition. For the reasons stated below, the plaintiff's motion is granted.

*Factual Background*

In 1977, Plaintiff Sims and Mary Cummins, who regularly visited Sims at State-ville, brought a civil rights suit against prison officials alleging that the requirement that Cummins submit to either a strip search or "spread leg" search prior to her entry at Stateville violated their constitutional rights. Several of the counts survived a motion to dismiss and the parties proceeded to discovery. The defendant's attorney scheduled the plaintiff Sims' deposition for March 28, 1979. A senior law student at the University of Chicago's Mandel Legal Aid Clinic planned to visit Sims prior to that time to prepare for the deposition. Sims was required to undergo an anal cavity search before he could meet with counsel. Prison regulations specify that searches are allowed at any time[2] and resi-

---

1. Rule 26(c) provides that:

    (c) *Protective Orders.* Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

    If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

2. Department of Corrections, Administrative Regulation 401 states in relevant part:

    1. POLICY OF DEPARTMENT: To maintain a safe and secure institutional environment by prohibiting a resident from carrying on his/her person, having in the living quarters, or concealing within the institutional grounds any material which may be harmful to fellow residents, institutional staff, visitors or himself/herself, or property which exceeds reasonable security or space considerations, or is not otherwise allowed. All persons (residents, employees, visitors) entering, leaving or on institutional grounds are subject to search at anytime.

    D.  *Strip Search of Residents*

    All such searches shall be conducted in an area separate and private from other residents and staff and in such a way as to ensure tact, privacy and a minimum of embarrassment.

    1. The resident shall be asked to remove everything from his/her pockets and then all clothing.

    2. All pockets and linings of clothing shall be examined for contraband, turning the clothes inside out where possible. The examiner shall inspect heels, soles and lining of shoes and the contents of all luggage or packages.

    3. Devices such as artificial teeth, limbs or wigs shall be removed and examined. Fingers or a large, wide-tooth comb should be run carefully through the hair.

    4. Using a flashlight, visual inspection should be made of the resident's nose, ears and mouth, including the underside of the tongue.

    5. Unless medically contraindicated, tapes or bandages on the resident should be removed and replaced with clean ones.

    6. Again using a flashlight, examination shall be made of the resident's groin, armpits and buttocks.

    7. Fingers and toes shall be spread by the resident and examined.

dents are routinely searched after contact with all visitors including attorneys.

Sims informed his attorney that he could not see him nor could he appear for his deposition since he did not wish to submit to a body cavity search. Sims had suffered a loss of one month's credit for good time for refusal to submit to such searches. After several requests by plaintiff's counsel, the defendants refused to waive the body cavity search and this motion was filed.

The plaintiff urges that the defendants' actions constitute interference with the judicial process and are not justified by the state's generalized interest in maintaining security within the institution. The defendants argue that the body cavity search policies were upheld by the Supreme Court in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), and thus are constitutionally permissible here. They also maintain that plaintiffs have failed to meet the good cause requirement necessary to obtain a protective order under FRCP 26(c).

To resolve this issue, the court is required to consider the plaintiff's right of access to the court, his privacy interests under the fourth amendment, the court's role as manager of the discovery process and the defendants' legitimate concerns with security at Stateville.

In a series of decisions, both the Supreme Court and circuit courts have recognized that prisoners have a constitutional right of access to the courts which must be "adequate, effective and meaningful." *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). *See also Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1973); *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Taylor v. Sterrett,* 532 F.2d 462 (5th Cir. 1976); *Adams v. Carlson,* 488 F.2d 619 (7th Cir. 1973).

Regulations and practices which unjustifiably obstruct ... the right of access to the courts are invalid ... The extent to which that right is burdened by a particular regulation or practice must be weighed against the legitimate interests of penal administration and the proper regard that judges should give to the expertise and discretionary authority of correctional officials. *Procunier v. Martinez,* 416 U.S. 396, 419–20, 94 S.Ct. 1800, 1814–1815, 40 L.Ed.2d 224.[3]

There can be no doubt that requiring a body cavity search places an obstacle to plaintiff's access to the court. The state has conditioned access upon his submission to a procedure which the plaintiff believes to be unconstitutional. He can neither avail himself of legal services nor participate in discovery which would hasten the disposition of his litigation without it.

In *Adams v. Carlson,* 488 F.2d 619 (7th Cir. 1973), prison officials required that attorneys and inmates confer by telephone in a visiting room divided by a soundproof glass barrier. Any materials transmitted between attorney and prisoner had to go through the prison guard. The court invalidated the restrictions emphasizing the nature of the right being considered:

Citation of authority is hardly needed for the proposition that an inmate's right of unfettered access to the courts is as fundamental a right as any other he may hold ... All other rights of an inmate are illusory without it, being entirely dependent for their existence on the whim or caprice of the warden ... To justify impairment of communication between attorneys and inmates in the name of security, a prison warden must come forward with facts which tend to support a reasonable suspicion not only that the contraband is being smuggled to inmates in the face of established preventive measures, but that their attorneys are engaged in the smuggling. *Id.* at 630–31.

---

**3.** The Supreme Court in *Procunier* struck down a rule banning the use of law students and paraprofessionals to interview clients. The Court found the rule an unjustifiable restriction on an inmate's access to the Courts. *Id.* at 419, 94 S.Ct. at 1814. It also reasoned that such a rule might deter lawyers from representation of inmates. Following the rationale of *Procunier,* this court does not believe that any of the legal determinations in this case should differ because part of plaintiff's representation was in the hands of a law student.

The court's decision requires the state to assert more than a mere generalized security interest. Rather, the state must tailor its restrictions on access to the courts to the specific security risk that is involved. If the state cannot show such a particularized risk, it cannot interfere with the plaintiff's rights.

Judge Wisdom echoed the Seventh Circuit's concern in his decision in *Taylor v. Sterrett, supra.* In that case, inmates complained of prisoner interference with inmate correspondence to attorneys. The court concluded that outgoing mail to courts, prosecuting attorneys, parole or probation officers and identifiable attorneys could not damage the security interest of the jail "except upon the most speculative theory." *Id.* at 474. The court suggested a procedure whereby prison officials could check to make sure that a "supposed" attorney was in fact a licensed attorney recognizing that "supposed" attorneys could pose a higher security risk. The court stressed that "before procedures that impede a prisoner's access to the courts may be constitutionally validated, [it] must be clear that the state's substantial interest cannot be protected by less restrictive means." *Id.* at 472. Thus, the Fifth Circuit underscored the proposition that the prison's security interests must give way to inmates' rights unless a particularized security problem is demonstrated.

The value that the Supreme Court, the Seventh Circuit and other federal courts have placed on prisoners' access to the courts for vindication of their rights is substantial. The Illinois state statutory law is equally solicitous. *Ill.Rev.Stat.*, Ch. 38, § 1003–7–2(e) provides that:

> Clergy, religious chaplain and attorney visiting privileges shall be as broad as the security of the institution or facility will allow.

The statutory provision contemplates a liberal interpretation of a prisoner's access to the judicial process. Once again, the simple assertion of a general security problem appears contrary to the statutory intent.

The defendants lightly dismiss these concerns and rely instead on the Supreme Court's recent decision in *Bell v. Wolfish, supra.* In *Wolfish,* Justice Rehnquist emphasized that the court should give deference to prison policies designed to maintain institutional security unless there is "substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations." *Id.* 441 U.S. at 548, 99 S.Ct. at 1879. If they have, the practice amounts to punishment and is unconstitutional. *See also Jordan v. Wolke,* 615 F.2d 749 (7th Cir. 1979). The Court considered the constitutionality of a prison—wide policy allowing body cavity searches. In reversing an injunction prohibiting all such searches, Justice Rehnquist stated that "admittedly this practice instinctively gives us the most pause."

The Court balanced the security interests of the institution against the privacy interests of the inmates in determining whether body cavity searches were constitutional. Its decision was carefully worded. Justice Rehnquist limited the issue decided:

> We deal here with the question whether visual body cavity inspections as contemplated by the MCC rules can *ever* be conducted on less than probable cause. Balancing the significant and legitimate security interests of the institution against the privacy interests of the inmates, we conclude that they can. *Id.* 441 U.S. at 560, 99 S.Ct. at 1885.

The Court did not state that all such searches were constitutional without probable cause in all circumstances. Rather, the Court invited individual determinations of whether a search was reasonable. The Court noted that the determination of reasonableness is not a mechanical process but rather one which requires balancing and is dependant upon the individual circumstances of the case. *Id.* at 559, 99 S.Ct. at 1884. *See United States v. Lilly,* 576 F.2d 1240, 1245 (5th Cir. 1978). If the search is determined reasonable, it is constitutional; if unreasonable it will not stand.

Contrary to the defendant's position, the situation here is not conclusively controlled

by the ruling in *Wolfish*. The Court did not consider the particular burden that those searches place upon attorney visits or upon the plaintiff's access to the judicial process. Nor did it specifically discuss anal searches, the most intrusive and humiliating of the searches common to both sexes.

Unlike the *Wolfish* case, the plaintiff here is not seeking prison–wide relief which would unduly involve court intervention in prison administration. Rather, the plaintiff seeks individual relief in the court's capacity as manager of the discovery process. A protective order assures plaintiff access to the court to litigate his action without undue interference with the prison administration.

In evaluating whether the anal cavity search requirement is reasonable, this court must look at the security interest asserted by the state. The defendant has attached an affidavit (Exhibit E) listing 12 instances of contraband found "on residents and in their body cavities (sic)". The affidavit does not specify the time period during which the contraband was found nor does it specify whether such discoveries were ever made before or after an attorney's visit or before or after a plaintiff appeared for a deposition. There has been no showing in this case that either these specific attorneys or attorneys generally pose a security problem necessitating body cavity searches in this specific situation. The state's failure to do so indicates to this court that its security concerns are excessive in response to this particular situation.

Access to the courts conditioned on submission to a degrading and unnecessary search is unduly restrictive. Absent a showing of any security problem resulting from inmate attorney visits, a protective order is well within the discretion of the federal court. For that reason, the plaintiff's motion for a protective order under F.R.C.P. 26(c) is granted. The prison may not require him to submit to a body cavity search before or after his deposition or before or after an attorney visit in preparation for the deposition.