**Mark FRAZIER and Frederick Reiners on behalf of themselves and all other persons similarly situated, Plaintiffs,**

**v.**

**Benjamin WARD, Commissioner, Department of Correctional Services, and Edwin J. LaVallee, Superintendent, Clinton Correctional Facility, individually and in their official capacities, Defendants.**

**No. 73–CV–306.**

United States District Court, N. D. New York.

July 16, 1981.

William E. Hellerstein, John Boston, Jonathan S. Chasan, New York City, Attys. for plaintiffs.

Robert Abrams, Atty. Gen. of the State of New York, Albany, N.Y., for defendants; Alan M. Adler, Asst. Atty. Gen., Albany, N.Y., of counsel.

### MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, District Judge.

In a detailed memorandum-decision and order dated February 17, 1977, after a court trial of four days, I ruled upon the several issues presented in this suit under 42 U.S.C. § 1983 filed in behalf of inmates of the Special Housing Unit, known as Unit 14, at the Clinton Correctional Facility, Dannemo-

---

ra, New York. The decision is reported in 426 F.Supp. 1354. Thereafter, a judgment in accord with the rulings as directed could not be agreed upon by the attorneys, and in a memorandum decision and order of June 21, 1977, I gave the reasons for the signing and filing of the proposed declaratory judgment, with minor changes and insertions, submitted by the attorneys for the plaintiffs. There was no appeal filed by either side from the rulings of the decision and the judgment filed.

By motion filed November 3, 1980, in behalf of the Attorney General of the State of New York, an order is sought pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to allow the Superintendent of the Clinton Correctional Facility to conduct visual body cavity searches upon inmates returning to the Special Housing Unit after contact visits on the ground that the United States Supreme Court in subsequent litigation has held such visual body examinations to be constitutional. The motion, fully submitted as of February 23, 1981, is supported by the affidavit of Clinton Superintendent Eugene S. LeFevre. The reasons given are that under the judgment the Superintendent is precluded from conducting routine strip frisks upon Unit 14 inmates returning from contact visits in the visiting room of the Facility. The Superintendent states that he is short staffed and cannot afford additional security personnel and because of the judgment is compelled to have a correction officer remain in the visiting room in an attempt to keep the Unit 14 inmates under constant supervision.

The relevant portions of the ordering paragraphs of the June 21, 1977 judgment to be considered on the motion are:

ORDERED, ADJUDGED, DECREED and DECLARED that the examination by defendants, their employees, agents and those acting in concert with them of the genitals or anal cavity of any inmate of the plaintiff class who is not departing from or returning to Clinton Correctional Facility is violative of the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States except

when, on the basis of a reasonably clear indication, a correction officer of the rank of sergeant or above has reasonable cause to believe that the inmate is concealing contraband in his genitals or anal cavity; and it is further

ORDERED, ADJUDGED, DECREED and DECLARED that any such examination of the genitals or anal cavity of an inmate of the plaintiff class is violative of the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States unless that examination is conducted under the following conditions:

(1) an inmate's genitals or anal cavity may be examined by passing a metal detector near those portions of the inmate's body or by visual examination;

(2) any such examination of an inmate's genitals or anal cavity is to be conducted in private and only before those persons whose presence is essential for security reasons;

(3) any such examination is not to be accompanied by derogatory or degrading remarks or any other harassing conduct; and it is further . . .

The position of the Attorney General in the memorandum of law is that *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) upheld the constitutionality of routine body contact searches after contact visits. It is contended, therefore, based upon that decision, that body searches conducted after contact visits, no matter the circumstances, are constitutionally permissible. The attorneys for the plaintiffs contend strongly to the contrary that *Wolfish* does not stand for the proposition that strip searches are *per se* constitutional, but rather, that body cavity searches are not *per se* unreasonable under the Fourth Amendment. *Bell v. Wolfish, supra*, 441 U.S. at 560, 99 S.Ct. at 1885. This reasoning is persuasive and acceptable to me as the proper interpretation of the *Wolfish* decision. Supreme Court Justice Rehnquist writing the opinion of the court states (p. 558, 99 S.Ct. p. 1884) that the body cavity strip search practice gave the court the most pause. The sensitivity and the humili-

ation of such search is emphasized in the dissenting opinions of Justices Powell, Marshall, and Stevens on that particular issue. The trend of federal decisions after the *Wolfish* ruling supports the interpretation of *Wolfish* urged for the plaintiffs on the body-cavity searches involved in this action. *Massey v. Wilson*, 484 F.Supp. 1332, 1333 (D.Colo.1980); *Brown v. Hilton*, 492 F.Supp. 771 (D.N.J.1980); *Bono v. Saxbe*, 620 F.2d 609, 617 (7th Cir. 1980); *Morris v. Travisono*, 499 F.Supp. 149 (D.R.I.1980); *Sims v. Brierton*, 500 F.Supp. 813 at 816–817 (N.D. Ill.1980).

In *Bell v. Wolfish*, at page 559, 99 S.Ct. at page 1884, it is stated:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

My decision in Frazier reached after careful and prolonged deliberation, in my judgment, measured and considered those elements detailed by the Supreme Court in reaching my conclusion that under the evidence presented the body-cavity routine search of Unit 14 inmates was unreasonable. In my decision I found that the evidence concerning the manner in which the rectal search was undisputed and uncontradicted, and supported the unanimous agreement of the experts, possessing practical knowledge as well as theoretical, that the routine body-cavity search of the Unit 14 inmates was unreasonable and unjustified for the preservation of security, *Frazier v. Ward, supra*, 426 F.Supp. pp. 1360–1367. It is interesting to note that I recommended the wording of the order in *Hodges v. Klein*, 412 F.Supp. 896 (D.N.J.1976) for consideration in the drafting of the proposed decree and that case was referred to in *Bell v. Wolfish*, 441 U.S. at p. 560, fn. 41, 99 S.Ct. at p. 1885 fn. 41, and there was no reference to the Frazier decision although it was referred to by the District Court in the beginning of the *Wolfish* case. *See United States v. Wolfish*, 439 F.Supp. 114, 148 fn. 35 (S.D.N.Y.1977).

■ Finally, it is my judgment that the provisions of F.R.Civ.Proc. 60(b)(5), (6) on their face and as interpreted do not warrant the grant of relief sought by the defendants to vacate portions of the previous judgment. *Bell v. Wolfish* did not reject the reasoning and case law upon which the judgment was based. The burden for the defendants to so vacate is a heavy one and there is not evident to my mind oppressive hardship that cannot be overcome by management of security personnel or the requirement of unreasonable expenditure. *United States v. Swift Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932); *King Seeley Thermos Co. v. Aladdin Industries, Inc.*, 418 F.2d 31 (2d Cir. 1969); *Rhem v. Malcolm*, 432 F.Supp. 769, 780 (S.D.N.Y. 1977); *Detainees of Brooklyn H. of Det. for Men v. Malcolm*, 520 F.2d 392, 399 (2d Cir. 1975). As stated in my Frazier decision I remain firm in my belief to the doctrine of restraint from undue interference in the administration of state prisons, unless federal constitutional violations and deprivation are clearly evident. That was the situation in this instance that supports the declaratory judgment.

The motion to relieve the defendants from the particular portion of the judgment discussed herein is denied and dismissed.

It is so Ordered.