**George GOFF, Plaintiff,**

v.

**Crispus NIX, et al., Defendants.**

**Civ. No. 84–129–E.**

United States District Court,
S.D. Iowa, C.D.

March 22, 1984.

See also 626 F.Supp. 736.

Barbara Schwartz, Prisoner Assistance Clinic, College of Law, Iowa City, Iowa, for plaintiff.

John Parmeter, Asst. Atty. Gen., Des Moines, Iowa, for defendants.

## MEMORANDUM OPINION AND ORDER

DONALD E. O'BRIEN, Chief Judge.

This matter comes before the Court on a motion for preliminary relief filed by the

---

**1.** A "contact" visit is one where an inmate will have the opportunity to actually touch another

plaintiff on February 27, 1984. An evidentiary hearing was held in Des Moines, Iowa on March 15, 1984 with all parties represented by counsel. After carefully considering the evidence presented and the arguments of counsel, the Court finds that the request for a preliminary injunction should be denied in part and approved in part as will be set out in this Order.

The plaintiff in this action is an inmate at the Iowa State Penitentiary in Fort Madison, Iowa. It is alleged that the prison's policy of requiring visual body cavity searches before and after "contact"[1] visitation and transportation outside of the prison walls, before and after exercise, and in other situations, is a violation of the inmate's constitutional rights of privacy, access to the courts, and freedom from cruel and unusual punishment. The provision of the policy requiring visual body cavity (vbc) searches before and after exercise periods and visits to the prison infirmary for inmates housed in segregation units is also challenged.

## I. PRINCIPLES OF LAW

It is clear that prisoners retain a number of constitutional rights while incarcerated. Prisoners have a right to a certain amount of privacy and are protected by the Fourth Amendment while in custody, although this Fourth Amendment protection may be reduced from that applicable to other citizens. *Bonner v. Coughlin,* 517 F.2d 1311, 1316 (7th Cir.1975) (opinion by now Supreme Court Justice Stevens). Inmates also have a constitutional right of access to the courts which must be adequate, effective, and meaningful. *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Furthermore, this Court is convinced that the denial of meaningful opportunities to exercise or to receive adequate medical attention is cruel and unusual punishment, violative of the Eighth Amendment, and constitutes an "unquestioned and serious deprivation of

individual.

basic human needs." *See Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). In light of needed security requirements in an institution such as the Iowa State Penitentiary, prison officials need not be required to maintain policies that minimize interference with the rights set out above. *Hurley v. Ward,* 549 F.Supp. 174, 184 (S.D.N.Y.1982). When the record contains substantial evidence, however, that corrections officials may have exaggerated their response to perceived security needs, thus unduly interfering with the exercise of these constitutional rights, courts must act to protect those rights. *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974).

The United States Supreme Court has held that vbc searches following contact visits with persons from outside the institution are not per se unconstitutional but must be judged for reasonableness based upon the facts of the particular situation. *Bell v. Wolfish,* 441 U.S. 520, 560, 99 S.Ct. 1861, 1885, 60 L.Ed.2d 447 (1979). The court in *Wolfish* stated that the following factors should be considered in determining whether a vbc search is reasonable under the circumstances: (1) the scope of the intrusion; (2) the manner in which it is conducted; (3) the justification for initiating it; (4) the place in which it is conducted. *See also, Arruda v. Fair,* 710 F.2d 886, 888 (1st Cir.1983); *United States v. Lilly,* 576 F.2d 1240, 1246 (5th Cir.1978); *Hurley v. Ward,* 549 F.Supp. 174, 186 (S.D.N.Y.1982); *Frazier v. Ward,* 528 F.Supp. 80, 82 (N.S.N.Y.1981); *Simms v. Brierton,* 500 F.Supp. 813, 817 (N.D.Ill.1980); and *Hodges v. Klein,* 412 F.Supp. 896, 902 (D.N.J.1976). In all of the above-cited cases, the constitutionality of vbc searches was determined in light of the reasonableness of the searches under the circumstances presented.

VBC searches of inmates have been held to be unreasonable and, thus, unconstitutional by several courts in situations other than when returning from contact visits. *See Hurley v. Ward, supra,* 549 F.Supp., at 186; *Hodges v. Klein, supra,* 412 F.Supp., at 902. This does not, however, prevent prison officials from making a vbc search if there is a reasonably clear indication or suggestion that the inmate is concealing something in a body cavity. *Hodges v. Klein, supra,* 412 F.Supp., at 903.

The plaintiff urges this Court to bar all vbc searches, even following contact visits, as unreasonable. The Court has found only one case to support the banning of vbc searches following contact visits. *See Frazier v. Ward, supra,* 528 F.Supp., at 82. The Court has also, however, found only one case that would directly support the defendants' position that vbc searches are reasonable in almost all situations. *See Arruda v. Fair, supra,* 710 F.2d, at 888. The Court is convinced that the proper test for examining the constitutionality of the vbc searches practiced by the Iowa State Penitentiary administration is whether such searches are reasonable under the circumstances experienced at the Iowa State Penitentiary.

## II. FINDINGS OF FACT

The parties have stipulated to a certain number of facts that were read into the record and may be summarized as follows:

1. There are 48 inmates housed in cellhouse 20, a segregation unit, who are allowed exercise, two inmates per pen at a time in two separate exercise pens.

2. When an inmate from cellhouse 20 is to be taken to the exercise area, he is strip searched. The evidence is unclear whether the strip search now includes a vbc search.

3. Upon return from exercise, a cellhouse 20 inmate is again strip searched and a vbc search is performed.

4. The inmate is cuffed with his hands behind him during this strip search and is escorted by two officers to the exercise area. In the exercise area, the cuffs are removed through a slot in the gate.

5. The exercise pen is shaken down each morning prior to exercise. The pens have a concrete floor and are surrounded by cyclone fence.

6. One tower has a view of these exercise pens but has responsibility for other areas as well.

7. One officer is specifically assigned to watch for inmates while in the two pens. Two additional officers are involved in escorting and may or may not be available for further supervision. When the exercise period is over, the inmate comes to the gate to be cuffed and is again strip searched with a vbc search included before returning to his cell.

8. Exercise for cellhouse 319, another segregation unit, is conducted in four pens with concrete floors. Three to four inmates are placed in each pen.

9. The cellhouse 319 inmate is strip searched in his cell prior to exercise and upon return is subjected to a body cavity search.

10. Cellhouse 319 inmates are escorted one on one to the exercise pen.

11. One officer will observe the exercise pen with others involved in escorting who may or may not be available for further supervision.

12. One tower has responsibility for viewing the 319 exercise pens as well as other areas.

13. When an inmate in cellhouse 20 or 319 has a visit, he is strip searched and subjected to a vbc search in the cellhouse. He is then placed in cuffs and shackles and escorted from the cellhouse. According to policy, he should not be given another strip search prior to his visit and he does not change clothes.

14. After returning to the cellhouse but prior to going to his cell, the inmate is strip searched again, including a vbc search.

15. General population inmates go through similar procedures before contact visits.

16. Two officers are normally stationed at the visiting room; one is inside the room and has responsibilities to check other areas, such as the public restrooms and the inmate restroom. The second officer is behind glass observing the visit. The officer behind the glass must watch two separate visiting areas and operate electric doors allowing visitors to enter and leave. It is difficult to watch both the visiting rooms at the same time.

This is the extent of the parties' stipulation of facts.

The evidence clearly demonstrated that the moving of any prisoner from cellhouse 20 or 319 is accomplished only after the officers have shackled the prisoner, placed him in a belly chain and handcuffs, which restricts his movement to a minimum. The evidence also demonstrated that a further confining "black box" for the hands is often used.

The use of the "squat and cough" search procedure has been used at the penitentiary but is not now being used.

There is little, if any, evidence that the penitentiary has had any problems with the introduction of contraband into the institution from attorneys, legal interns, clergymen or the ombudman's office and if, in the unlikely event that there are some future problems with such individuals, the defendants can promptly take necessary steps against such an individual or bring the situation to the attention of the Court.

At the hearing, testimony showed that there is a great concern among the prison administration about the flow of contraband, including drugs and weapons, into the prison from the outside and particularly into the segregation units. Testimony further indicated, however, that the vbc search policy, fully implemented on February 22, 1984, has caused nearly all, if not all, of the 25 inmates in cellhouse 319 to go without exercise since that date. Furthermore, there was testimony that the 40 inmates in cellhouse 20 have not exercised since March 5, 1984. Testimony by the plaintiff indicated that, because of the vbc search policy, he has foregone visits with his attorney in relation to a criminal action against him. Testimony further indicated that the reason inmates were foregoing these privileges was because they felt the vbc search was degrading and that the

guards used it as an opportunity for ridicule and intimidation.

The Court is aware that the smuggling of weapons, drugs and other contraband into a high-security area is a serious and difficult problem for prison administrators to address. The district court cases that have considered this question in other states all refer to substantial evidence that such contraband is passed into penal institutions through body cavities. *See, e.g., Hurley v. Ward, supra,* 549 F.Supp., at 185 (a number of balloons are found in the sewage emanating from a New York prison). In the *Hurley* case, however, the evidence that body cavities were used to transport contraband was strong despite the use of vbc searches. Furthermore, prison officials who testified at the hearing in the present case could recall few, if any, instances where contraband was actually intercepted via a vbc search, despite testimony that such searches have been going on in random fashion for a number of years at Fort Madison.

Testimony also indicated that vbc searches are required before and after visits to the prison infirmary by segregation inmates. It has been argued to the Court that the availability of various drugs and potential weapons in the prison infirmary makes it essential for such searches to occur. The testimony also indicated, however, that inmates are supervised most, if not all, of the time that they are in the infirmary and could be watched all of the time. Testimony also indicated that inmates are subjected to vbc searches when leaving the institution, including prior to and following court appearances. Testimony further indicated that inmates are heavily guarded at all times during court appearances except when in private conversations with their attorneys.

The Court finds that the newly-instituted policy that mandates vbc searches in a wide variety of situations has had and will continue to have a significant chilling effect on the exercise of some constitutional rights at the Iowa State Penitentiary. Specifically, the rights to exercise, medical treatment, and access to the courts can be expected to be seriously compromised if inmates are required to submit to vbc searches as a condition for exercising such rights.

## III.  CONCLUSIONS OF LAW

■ The Court finds, based on the evidence so far, that subjecting inmates to vbc searches as a condition for the exercise of the following rights or privileges is unreasonable and therefore unconstitutional under the circumstances that have been presented to the Court:

1. Going to or returning from contact visits with an attorney, legal intern, prison ombudsman, clergyman, or chaplain.

2. Going to or returning from the prison infirmary or a hospital.

3. Going to or returning from the exercise areas.

4. Going to or returning from court dates, whether on or off the prison grounds, unless the inmate has been out of restraints and beyond visual supervision for a significant period of time. Private visits with attorneys shall not be considered out of restraints or beyond visual supervision.

The Court finds that, in the above situations, the scope of the intrusion outweighs any security interests that may be present.[2] Based upon the evidence presented at the hearing, the Court feels that the security concerns in these situations may well be exaggerated and that the exercise of the inmate's constitutional rights must take precedence. The Court feels that the possible addition of a few extra correctional officers,[3] while somewhat of a burden to

2. The defendants contend the full implementation of this new policy is necessary and that the inmates are "protesting" in an effort to change the policy. The inmates say "they have taken away everything else and now they want to take away our manhood."

3. The evidence presented so far is not persuasive that additional officers would be needed.

the defendants, is clearly a more reasonable alternative than to engage in a practice the effect of which is to deny basic human rights.

The Court further finds that the requirements for the issuance of a preliminary injunction have been met. The movant has shown the possibility of irreparable harm in being denied access to his attorney and opportunities to exercise. The defendants have not convinced the Court that the security goals achieved by the vbc searches are so critical as to outweigh the exercise of inmates' constitutional rights. The current state of the record is such that the Court feels the plaintiff has a good probability of succeeding on the merits of at least a portion of his claim and that the public interest is always advanced by the proper enforcement of constitutional requirements. *See Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 113 (8th Cir.1981).

IT IS THEREFORE ORDERED that defendants are hereby enjoined from conducting visual body cavity searches in the following situations:

1. Before or after contact visits by attorneys, legal interns with a notarized letter of introduction from a licensed attorney, clergy, chaplains, or representatives of the prison ombudsman's office.

2. Before going to or after coming from the prison infirmary or University of Iowa Hospitals.

3. Before or after attendance by inmates at court dates, whether on the prison grounds or in any other location, unless the inmate is out of restraints *and* beyond the visual supervision of correctional officers for a significant period of time. Private visits with attorneys shall not be considered as being outside of visual supervision or out of restraints.

4. Before going to or after coming from the exercise areas.

IT IS FURTHER ORDERED that nothing in this Order shall prevent the defendants from conducting visual body cavity searches in the following situations:

(a) Before or after "contact" visits with any visitors coming to the prison except as previously set out.

(b) Upon initial admission to the prison or before or after being outside the prison on furlough, transfer or work release.

(c) Before or after a segregated prisoner has mixed with the "general population" of the prison without supervision or restraints.

(d) Before or after an inmate, in any set of circumstances, has demonstrated activity which would give an official of the penitentiary of the status of Security Director or above a reasonably clear indication that an inmate is actually concealing something in a body cavity. In any such situations, the burden will be on the Warden to show that the use of this exception was reasonable.

IT IS FURTHER ORDERED that nothing in this Order shall prevent the defendants from continuing to require all prisoners to submit to strip searches without use of a visual body cavity search or use of a squat-and-cough procedure.

IT IS FURTHER ORDERED that the practice known as "squat-and-cough" is also prohibited from being used under any circumstances at the Iowa State Penitentiary.

IT IS FURTHER ORDERED that this Order shall apply to all inmates at the Iowa State Penitentiary, not only to cellhouse 20 and 319 inmates. *See* rule 15(b), Federal Rules of Civil Procedure (issues tried by implied consent shall be treated as if pleaded).

IT IS FURTHER ORDERED that this injunction shall constitute interim relief and remain in effect only until a final order is entered by this Court after a full hearing in this cause. The Court reserves the right to make further findings in this matter based on evidence already heard or as additional evidence is presented.

This is an interim order based on the evidence presented thus far. The Court recognizes that this cause should be expedited so that a final determination can be reached. Therefore,

IT IS FURTHER ORDERED that this cause is set for trial in Fort Madison, Iowa on April 25, 1984 at 9:00 a.m., and all discovery in this cause shall be completed on or before April 15, 1984.

IT IS FURTHER ORDERED that a copy of this Order shall be sent directly to the Warden and the Deputy Warden at the Iowa State Penitentiary.