**Zebbie CLIFTON et al.**

v.

**William B. ROBINSON, in his individual and official capacity as Commissioner of the Bureau of Corrections et al.**

**Civ. A. No. 79–1464.**

United States District Court,
E. D. Pennsylvania.

Aug. 25, 1980.

32

Kenneth C. Frazier, Drinker, Biddle & Reath, Philadelphia, Pa., for plaintiff.

Marc G. Brecher, Deputy Atty. Gen., Com. of Pa., Philadelphia, Pa., for defendant.

## MEMORANDUM

HUYETT, District Judge.

### Introduction

Four inmates at Graterford Prison filed this action pursuant to 42 U.S.C. § 1983, seeking injunctive relief from and monetary damages for alleged constitutional violations arising from a prison–wide lockup. Defendants are the Commissioner of the Pennsylvania Bureau of Corrections and the

Superintendent and Deputy Superintendent of Operations of Graterford Prison. The lockup occurred after a correctional officer at Graterford was assaulted by an inmate, and lasted from March 20, 1979 to March 25, 1979. Defendants add another day to this period due to a strike by the prison guards. During the lockup a prison–wide search was conducted for weapons and contraband. Plaintiffs allege that they were (1) denied due process of law and subjected to cruel and unusual punishment in violation of their First, Fourteenth and Eighth Amendment rights as a result of the five–day confinement itself and as a result of the condition of their confinement during this period, and (2) subjected to searches and seizure of personal property by the prison guards in violation of their Fourth and Fourteenth Amendment rights. Plaintiffs further allege that these deprivations occurred with the direction, consent and knowledge of defendants.

Defendants have moved for summary judgment based on the complaint, plaintiffs' answers to interrogatories and affidavits of the parties. Plaintiffs oppose the motion, arguing that there exist genuine issues of material fact and that defendants are not entitled to summary judgment as a matter of law. Although defendants have not answered the complaint, their motion raises a defense of qualified good faith immunity to plaintiffs' claims. Pursuant to the reasoning set forth below, the defendants' motion shall be granted in part and denied in part.

### Denial of Due Process Claims

■ Plaintiffs claim that their confinement during the lockup violated their due process rights under the Fourteenth Amendment in that the confinement itself was arbitrary and denied them their reasonable expectation of liberty. However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356

(1948). Nevertheless, "though his basic rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for a crime." *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974 (1974). Thus, in determining the propriety of plaintiffs' due process claims, an accommodation must be made between institutional needs and objectives and the provisions of the constitution which are of general application. *See id.* at 556, 94 S.Ct. at 2974.

■ The due process clause of the Fourteenth Amendment is triggered only if plaintiffs were deprived of a liberty or property interest. *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). Any change in conditions of confinement having a substantial adverse impact on the prisoner is sufficient to invoke protection of the due process clause. *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1975). As I stated in *Saunders v. Packel*, 436 F.Supp. 618 (E.D.Pa.1977), prisoners have a "reasonable expectation rooted in the past practices of state prison authorities that they will not be confined indiscriminately in their cells, absent some situation that poses a danger to the smooth functioning of the prison." *Id.* at 623. However, "central to all other correctional goals is the institutional consideration of internal security within the correction facilities themselves. It is in light of this legitimate penal objective that a court must assess challenges to prison regulations based on asserted constitutional rights of prisoners." *Pell v. Procunier*, 417 U.S. 817, 823, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1973). Prisoners, therefore, must also expect that their limited freedom will be curtailed at times of indisputable crisis, and for reasonable periods thereafter for precautionary measures. *Saunders v. Packel, supra* at 622.

■■ Although a court might disagree with the choice of means employed to safeguard prison security, it should not second guess the expert administrators on matters about which the latter are better informed.

**34**

*Bell v. Wolfish*, 441 U.S. 520, 547–48, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979). Because the realities of running a prison are complex and difficult, in the absence of substantial evidence to indicate that officials have exaggerated their response to the need for security, a wide ranging deference should be accorded the decision of prison administrators by the courts. *Jones v. North Carolina Prisoner's Union*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1976). As I stated in a case strikingly similar to the one at bar:

> [u]pon discovering that a prison employee had been stabbed to death apparently by inmates, the warden had a valid reason for locking up the entire prison population. At a minimum, there was a serious crime crying to be solved and fast action was vital. Isolation of the inmates would facilitate the investigation which, for all the prison officials knew, could have signaled an incipient insurrection. Moreover, by locking prisoners in their cells, more manpower could be devoted to the immediate task of evaluating the situation and beginning the investigation. Also, the decision was made to commence a cell search for weapons, such as the one used to kill the cook, and other contraband, and Fourteenth Amendment notions of fundamental fairness and rational decision making are no impediment to the warden's decision to accomplish that search by locking all prisoners in their cells until the search was completed.

*Saunders v. Packel, supra* at 623. Similarly, defendant's actions in ordering the lockup *sub judice* were reasonable responses to an emergency situation. Thus, in light of the deference due defendants in this regard, and the balance between legitimate penal objectives and the dictates of the constitution which the cases require me to strike, I conclude that plaintiffs' due process rights were not violated because of the lockup involved in this case. Thus their due process claims fail as a matter of law.

### Eighth Amendment Claims

■ Plaintiffs claim that the fact of their confinement during the lockup as well as the conditions of that confinement constitute cruel and unusual punishment in violation of the Eighth Amendment. However, "[p]ersuasive authority teaches that segregated confinement in solitary or maximum security is not *per se* banned by the Eighth Amendment." *Burns v. Swenson*, 430 F.2d 771, 777 (8th Cir. 1970) and cases cited therein. It follows, therefore, that plaintiffs' Eighth Amendment claim based on the fact of their confinement must fail as a matter of law.

■ Plaintiffs' Eighth Amendment claim based on the conditions of the lockup requires further consideration. I note initially that it is not disputed that during the lockup plaintiffs were denied visitation, phone calls, showers, exercise, change of clothes and bedding, legal and medical services and religious and educational activities. Nor is it denied that the service of meals and hygenic conditions of the cells during this period fell below the prison norm.

Courts have utilized various tests to determine whether treatment of a prisoner violates the Eighth Amendment. Such violations have been found, for instance, where conditions can be described as foul, inhuman and violative of basic concepts of decency, *Wright v. McMann*, 387 F.2d 589, 526 (2d Cir. 1967), or as "physical or mental abuse or corporal punishment of such base, inhuman and barbaric proportions so as to shock a court's sensibilities." *Burns v. Swenson, supra* at 778. *See also McCray v. Burrell*, 516 F.2d 357 (4th Cir. 1975), *cert. dismissed*, 423 U.S. 923, 96 S.Ct. 264, 46 L.Ed.2d 249 (1976) (Eighth Amendment violation found where prisoner subjected to barbaric conditions "threatening an inmate's sanity and severing his contacts with reality"). I have examined the conditions complained of in the case at bar, and do not believe that they sink to the level of those described in the above–cited cases. To the contrary, I find the conditions here more similar to those discussed in *Lovern v. Cox*, 374 F.Supp. 32 (W.D.Va.1974), in which it was held that "the contentions regarding unsanitary maintenance and upkeep do not

constitute conditions so hazardous to life, health or safety as to warrant the intervention of a federal court." *Id.* at 35. Useful analogies can also be drawn to *Sostre v. McGinnis,* 442 F.2d 178 (2d Cir. 1971), *cert. denied sub nom. Sostre v. Oswald,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 *and Oswald v. Sostre,* 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972) (marginally adequate diet, availability in cell of rudimentary implements of personal hygiene, ability to communicate with other prisoners, availability of reading material), in which no Eighth Amendment violation was found. Thus, because the conditions complained of herein are not of the abhorrent, indecent nature extant in the cases in which Eighth Amendment violations have been found, and are more similar to those found in the cases in which such claims have been rejected, plaintiffs' Eighth Amendment claims must likewise fail as a matter of law.

### Claim of Denial of Medical Care

 Plaintiff Clifton alleges that he was denied dental care for a serious toothache during the lockup in violation of his Eighth Amendment rights. It is clear that denial of dental treatment can constitute an Eighth Amendment violation. *Stokes v. Hurdle,* 393 F.Supp. 757 (D.Md.1975). However, "[i]n order to state a cognizable [constitutional] claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). This "deliberate indifference" standard was clarified by the *Estelle* Court to include only "unnecessary and wanton infliction of pain" which is "repugnant to the conscience of mankind." *Id.* at 105–06, 97 S.Ct. at 291–92. Assuming *arguendo* that Clifton's medical need was serious, it is clear from the face of the complaint that the denial of dental care did not evince deliberate indifference as so defined. Dental care was allegedly denied only during the lockup, and as such was a necessary concomitance of the lockup. This being the case, and in light of my earlier discussion concerning the propriety of the lockup, it

cannot be said that the denial was "unnecessary" or "wanton", or "repugnant to the conscience of mankind." *See id.* Additionally, I note that there has been no allegation of substantial harm resulting from the denial of dental care, an element which has been held to be a *sine qua non* in denial of dental care cases. *Stokes v. Hurdle, supra; Blakey v. Sheriff of Albemarle County,* 370 F.Supp. 814 (W.D.Va.1974). Thus plaintiff Clifton's Eighth Amendment claim arising from the alleged denial of dental care must fail as a matter of law.

### Unconstitutional Search and Seizure Claims

 The plaintiffs allege that they were denied due process of law when items of personal property legitimately in their possession were removed from their cells by guards during the prison–wide search and never returned. They claim that defendants were aware of and condoned this confiscation of their personal property. In this regard I note initially that, while prison guards need no probable cause before they are permitted to search a cell, a prisoner does have a reasonable expectation that the items of personal property legitimately in his possession will not be wantonly destroyed or confiscated absent some legitimate state interest in doing so. Thus proof that a plaintiff's property was damaged or destroyed during a search, or that his cell was subjected to purposeful and unnecessary disruption could establish a Fourth Amendment violation. *Saunders v. Packel, supra* at 626. Moreover, there exists on the record before me a genuine issue as to whether the matters alleged actually occurred. Also, I note that § 1983 suits may not be maintained on the basis of *respondeat superior, Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1082 (3d Cir. 1976); *Goode v. Rizzo,* 506 F.2d 542, 550 (3d Cir. 1974), *rev'd on other grounds sub nom. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), and that the defendants have denied any personal involvement in or awareness of the alleged Fourth Amendment violations. Both sides' assertions are

supported by affidavits. Thus there exists before me a genuine issue as to the matter of defendants' personal involvement, clearly a material fact. Summary judgment is therefore inappropriate as to plaintiffs' Fourth Amendment claims.

*Good Faith Immunity Defense*

■■■■■ In light of the above discussion, only plaintiffs' Fourth Amendment claims remain in this case. However, these cannot be resolved by summary judgment pursuant to defendants' qualified good faith immunity defenses because there exist genuine issues of material fact as to the applicability of these defenses to this case. Qualified immunity would not be available to defendants if, "based on all the circumstances as they reasonably appeared at the time of the action, on which liability is sought to be based," *Schuerer v. Rhodes*, 416 U.S. 232, 247-8, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974), "they knew or reasonably should have known that the action [they] took within [their] sphere of official responsibility would violate the constitutional right of [plaintiffs], or if [they] took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to [plaintiffs]. *Wood v. Strictland*, 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). Although plaintiff's Fourth Amendment rights within a prison were established at the time of the search, issues of motivation, intention and the subjective existence of good faith are questions of fact which have been raised by the pleadings but cannot be resolved on the record before me. *See Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1977).

For all of the above reasons, summary judgment shall be granted in favor of defendants as to plaintiffs' due process and Eighth Amendment claims. However, defendants' motion for summary judgment shall be denied as to plaintiffs' Fourth Amendment claims and defendants' good faith immunity defenses. An appropriate order follows.