**Edward GARFIELD**

v.

**Sgt. John DAVIS, et al.**

**Civ. A. No. 82–2196.**

United States District Court,
E.D. Pennsylvania.

June 1, 1983.

Edward Garfield, pro se.

LeRoy S. Zimmerman, Atty. Gen., Marc G. Brecher, Deputy Atty. Gen., Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff, Edward Garfield, is currently a prisoner incarcerated at Huntingdon Prison and proceeds pro se in this § 1983 civil rights action. Defendants, various state of-

ficials at Graterford and Huntingdon Prisons, have filed a motion for summary judgment. For the reasons hereinafter set forth, the Court will grant defendants' motion.

An uprising occurred at Graterford Prison on January 24, 1982, which resulted in defendants taking disciplinary measures against plaintiff, including his transfer to Huntingdon Prison. Plaintiff contends the correctional sanctions imposed by defendants in response to the January 24th incident violated his constitutional rights.

A preliminary consideration for the Court in deciding summary judgment motions is whether a genuine issue as to any material fact exists which would preclude entry of judgment for the moving party as a matter of law. F.R.C.P. 56(c). This determination is made by examining all pleadings, depositions, answers to interrogatories, admissions and affidavits filed with the Court. F.R. C.P. 56(c). Defendants in this case have filed affidavits setting forth their factual contentions surrounding the incident which plaintiff claims violated his constitutional rights. Although plaintiff has filed no "affidavit" raising any factual issues or pointing to any answers to interrogatories or depositions which contest any of defendants' sworn statements, he has filed a document entitled "Unsworn Declaration" as part of his brief in opposition to defendants' motion for summary judgment. Since plaintiff's motion for appointment of counsel was denied in this Court's Order of May 11, 1983, and he proceeds without the benefit of advice from experienced counsel, the Court shall consider the allegations contained in his "Unsworn Declaration" as if made under oath for purposes of this summary judgment motion.

The following facts emerge uncontradicted from the record. On January 24, 1982, an uprising occurred at Graterford Prison on the cell block where plaintiff was then confined. Approximately thirty-five to fifty prisoners participated in the incident, during which eight staff members sustained minor injuries. Defendant Cuyler, Superintendent of Graterford, declared the institution to be in a state of emergency. In an effort to regain control of the cell-block, prison officials returned the inmates to their individual cells. The prisoners remained confined for two days while officials searched individual cells for weapons and other contraband.

Plaintiff admits carrying at some time during this incident and retaining in his cell a glass beverage container. Such receptacles are considered contraband, possession of which constitutes A class 1 behavioral "Misconduct", pursuant to the Bureau of Corrections Administrative Directive 801, § IIB(a)(3). On January 26, 1982, fifteen Graterford prisoners, including plaintiff, were transferred to Huntingdon where, upon his arrival, he was immediately placed in administrative segregation and there received a copy of a Misconduct Report on January 26th or 27th. A hearing on the alleged misconduct was held on January 28, 1982, at Huntingdon, which hearing was presided over by defendants Captain Myers, Steven Polte and Joseph Ciganik. The Misconduct Report shows that plaintiff did not request witnesses nor assistance from an inmate representative at his misconduct hearing. In his "Unsworn Declaration", plaintiff states that the reason why he did not request witnesses or inmate assistance is because he knew no one at Huntingdon. Plaintiff was found guilty of "Possession of or Introduction of Contraband or Implements of Escape", BC–ADM 801 § IIB(a)(3), including possession of alcohol, and ordered confined for three months in disciplinary custody. On March 4, 1982, the Program Review Committee at Huntingdon, comprised of defendants T.W. Henry, E.C. Wicker and J.A. Dick, sustained the Hearing Committee's finding of guilty. Plaintiff was, however, released from disciplinary custody after only two months, as a result of a recommendation to the Program Review Committee by Superintendent Zimmerman, who advised the Committee that investigation showed that the plaintiff did not possess alcohol in the contraband glass and suggested that plaintiff's disciplinary custody be reduced to two months.

Plaintiff's alleged constitutional violations, though stated rather vaguely in his complaint and brief in opposition to defendants' motion for summary judgment, are as follows: (1) The procedures defendants followed in ascertaining plaintiff's involvement in and disciplining him with regard to the January 24th uprising at Graterford violated his due process rights under the Fourteenth Amendment; (2) By failing to adhere strictly to their own institutional regulations in administering said discipline, defendants denied plaintiff equal protection of the laws; and (3) Plaintiff's confinement in administrative segregation and transfer from Graterford Prison to Huntingdon constituted cruel and unusual punishment in violation of the Eighth Amendment.

For the reasons set forth below, the Court has determined that defendants in this matter are entitled to summary judgment.

First, plaintiff alleges that his due process rights under the Fourteenth Amendment were violated in that he was placed in administrative segregation without first receiving notice of the misconduct charges against him, and he was transferred to Huntingdon Prison also without notice of the alleged wrongdoing. Graterford Prison was operating under a declared state of emergency at the time this action was taken against plaintiff. Although BC–ADM 801 § IIIB provides that a prisoner placed in pre-hearing confinement shall receive notice of any misconduct charges against him within three hours, BC–ADM 801 § VII permits suspension of the Directive's various provisions in "an extended emergency situation or extended disruption of normal routine." Prison officials are given latitude by the courts in the exercise of their discretion concerning prison security. *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *LeBatt v. Twomey,* 513

F.2d 641 (7th Cir.1975); *Clifton v. Robinson,* 500 F.Supp. 30 (E.D.Pa.1980). It is uncontested that at the time of plaintiff's pre-hearing confinement there existed an extended emergency situation, as well as an extended disruption of normal institutional routine at Graterford Prison. Eight correctional officers were injured in the disturbance; guards had been assaulted; inmates broke tables and used the wooden parts as clubs. Large quantities of fermented beverages were discovered on the cell-block indicating consumption by more than a few inmates. Plaintiff admits drinking a beverage out of a glass container at the time of the disruption, and a guard reported seeing the plaintiff with a glass container in his hand. Considering these serious circumstances, Superintendent Cuyler's action in declaring a state of emergency was clearly justified, and plaintiff's pre-hearing confinement was warranted as provided in BC–ADM 801 § IVB(1).[1]

Until recently, the process due prisoners upon segregation from the general population for administrative purposes, where a state-created liberty interest was found to exist, was thought to be the standard set forth in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *See Wright v. Enomoto,* 462 F.Supp. 397 (N.D. Cal.1976), *aff'd,* 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978); *Hewitt v. Helms,* 655 F.2d 487 (3d Cir.1981), *rev'd,* —— U.S. ——, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). *Wolff v. McDonnell* set forth the following due process requirements: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence in defense provided same shall not be unduly hazardous to institutional safety or correctional goals; (4) assistance from an inmate representative if the accused inmate is illiterate or the issue involved is extremely complex; and (5) a written statement of the factfinders as to the evidence relied on

---

1. BC–ADM 801 § IVB(1) provides: "An inmate who has allegedly committed a Class 1 Misconduct may be placed in Close or Maximum Administrative Custody upon approval of the offi- cer in charge of the institution not routinely but based upon his assessment of the situation and the need for control pending application of procedures under paragraph III."

and their reasons for the disciplinary action decided upon.

■ In its recent decision in *Hewitt v. Helms,* the Supreme Court recognized that specific Pennsylvania statutory provisions and prison regulations create a liberty interest in its state prisoners to remain in the general prison population. *Hewitt* further held that when placed in administrative segregation pursuant to such regulations, prisoners in Pennsylvania are not entitled to all the due process provided by *Wolff.* Pursuant to Pennsylvania prison regulations, administrative segregation is authorized in instances in which an inmate (1) poses a threat to other inmates; (2) poses a threat to prison staff; (3) poses a threat to himself; (4) presents an escape risk; (5) requires protection from other inmates; (6) is being reclassified or transferred; and (7) disciplinary charges are pending against him. BC–ADM 801 §§ VA, VI A(1). As to such administrative segregation, a prisoner confined in Pennsylvania is entitled only to an informal nonadversarial evidentiary review of the existing evidence against him within a reasonable time following his confinement. The *Hewitt* court delineated the due process standard to which prisoners placed in administrative confinement in Pennsylvania are entitled: "An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." At ——, 103 S.Ct. at 874.

■ In light of this recent Supreme Court pronouncement, it is clear that plaintiff Garfield was entitled to *Hewitt* due process with respect to his pre-hearing confinement from January 24 through January 28, 1983, and to *Wolff* due process with respect to his confinement for two months in disciplinary custody. Since the initial decision to place plaintiff in administrative confinement was made under the pressing circumstances of a prison uprising, at which time plaintiff admits possessing contraband in the form of a glass container, and plaintiff was afforded a dispositive hearing on the charges against him within four days of his transfer and confinement, this Court is satisfied that plaintiff received the process due him under *Hewitt* and *Wolff* with regard to both periods of confinement.

The uncontested facts in this matter show that plaintiff received written notice of the charges against him within two days of his confinement. This satisfies both *Hewitt* and *Wolff* standards. Within four days of the alleged misconduct, plaintiff appeared before an impartial Hearing Committee, at which time he had the opportunity to present his views of the January 24th incident both orally and in writing. Plaintiff acknowledges the exercise of this right by his signature on the "Hearing Committee Action" form. Exhibit D–3 at 4. This is all the process plaintiff was entitled to under *Hewitt.*

■ Plaintiff claims that he was denied the right given to him by *Wolff* to present witnesses in his defense at the January 28th hearing. Plaintiff waived this right by refusing to request witnesses. In his "Unsworn Declaration" plaintiff admits refusing to sign the "Inmate Request for Representation and Witnesses" form presented him. See also D–3 at 1 and Affidavit of Captain C.R. Myers, Paragraph 3. Since plaintiff is demonstrably literate and the charges against him were not extremely complex, he was not entitled to assistance from an inmate representative under *Wolff;* however, if Pennsylvania prison regulations may be viewed as having created such a right, BC–ADM 801 § III D(2), this, too, was waived by plaintiff's failure to make his request in writing as required by the same regulation. Plaintiff has no constitutional right to confront or cross-examine witnesses at a prison disciplinary hearing, *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Thus, plaintiff received all the process due him under both *Hewitt* and *Wolff* at his January 28th hearing.

■ Neither intrastate nor interstate transfers of state prisoners directly impli-

cate the due process clause of the Fourteenth Amendment. *Olim v. Wakinekona,* —— U.S. ——, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); and *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). Therefore, plaintiff's claim that his due process rights were violated by his transfer from Graterford to Huntingdon must fail.

■ Plaintiff also alleges violation of his due process rights with respect to the Program Review Committee's affirmance of the Hearing Committee's decision. Administrative review of prison disciplinary hearings is not constitutionally guaranteed; therefore, plaintiff's claims with respect to the Program Review Committee's decision do not rise to constitutional significance. *See King v. Hilton,* 525 F.Supp. 1192, 1200 (D.N.J.1981) and *U.S. ex rel. Jones v. Rundle,* 358 F.Supp. 939, 947 (E.D.Pa.1973).

■ Plaintiff's final due process claim challenges the sufficiency of the evidence used to support defendants' finding of his guilt at the misconduct hearing and review. Both panels considered the written Misconduct Report of Graterford staff member, Sergeant Davis, stating that he observed plaintiff carrying a glass container, partially filled with what the officer believed to be a fermented beverage, and plaintiff's admission that he indeed possessed a container, but without a fermented beverage therein. Plaintiff's admission of guilt as to one penal code violation singly commanded a maximum six months confinement to disciplinary custody (BC–ADM 801 § III F 2(c)); however, plaintiff served only two months of a three month "sentence" upon the recommendation of Huntingdon Superintendent Zimmerman, which recommendation was as follows:

I have further reviewed Misconduct # 148062 with substantiating information from Graterford. Based upon the information at hand, I feel Mr. Garfield can only conclusively be proved guilty of having contraband in the form of a glass container. At this time, I feel he should be reviewed for release to population based upon his adjustment to date.

Furthermore, plaintiff was present at both hearings determining his misconduct and ably presented verbal testimony in his defense. In light of all these circumstances, the Court is satisfied that plaintiff's due process rights in all respects were duly afforded.

■ Second, plaintiff broadly asserts that his right to "equal protection of the laws" under the Fourteenth Amendment was violated by the fact that his hearing was held at Huntingdon, instead of Graterford, contrary to a prison regulation which he fails to specify. On the contrary, BC–ADM 801 § III F(2)(b) provides that the Hearing Committee may recommend transfer of an inmate found guilty of committing a Class 1 Misconduct to another institution. In this case, plaintiff was transferred before his hearing was held; however, there exists no state or federal right of prisoners to continue in confinement at the prison of their choice at any particular time. *See Olim v. Wakinekona,* —— U.S. ——, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). Moreover, plaintiff was one of fifteen Graterford prisoners transferred as the result of his suspected participation in the January 24th uprising (Affidavit of Julius T. Cuyler, D–1, Paragraph 6). As such, plaintiff represented a serious security threat to institutional safety, and his transfer pending investigation of the charges against him was reasonable.

■ Third, plaintiff also alleges that his transfer from Graterford Prison to Huntingdon, 250 miles away, resulted in the passage of two months of his life under inhumane, solitary conditions, the loss of visits from his family, and a blot on his prison record which cost him his job and wages at Graterford. Loosely interpreted, plaintiff's allegations constitute a claim that defendants' treatment of him in regard to the January 24th uprising amounted to "cruel and unusual punishment" in violation

of the Eighth Amendment. Plaintiff submits no evidence of the inhumane conditions complained of, nor that defendants are personally responsible for creating them. Furthermore, administrative segregation is not per se prohibited by the Eighth Amendment. *Clifton v. Robinson,* 500 F.Supp. 30 (E.D.Pa.1980); *Burns v. Swenson,* 430 F.2d 771 (9th Cir.1970). The loss of visits by family members occasioned by the transfer, and the alleged detriment to his prison record, also unsubstantiated by evidence, are but incidental effects of a duly and constitutionally imposed disciplinary measure.

For the foregoing reasons, defendants' motion for summary judgment is hereby granted.