Anthony COOK, Plaintiff,

v.

The CITY OF NEW YORK: Edward I. Koch, Mayor; New York City Police Department; Police Officer Paul Amundson; Police Officer Ervon Ludvig; New York City Department of Corrections; Warden Vernon Baines, Bronx House of Detention for Men; Corrections Captain J. Lesser; Corrections Officer J. Rosado; Mario Merola, Bronx County District Attorney; Laurence Lebowitz, Assistant District Attorney, Defendants.

No. 83 Civ. 1857 (WCC).

United States District Court,
S.D. New York.

Jan. 5, 1984.

Anthony Cook, plaintiff, pro se.

Frederick A.O. Schwartz, Jr., Corp. Counsel for the City of New York, New York City, for defendants; Norma Kerlin, Robert Ligansky, Asst. Corp. Counsels, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

Plaintiff Anthony Cook ("Cook"), currently incarcerated at the New York Correctional Institution at Napanoch, filed this *pro se* § 1983 action against the City of New York, Mayor Edward I. Koch, the New York City Police Department, the New York City Department of Corrections, and various police officers, corrections officers and prosecutors, alleging that they violated his constitutional rights while he was being held at the Bronx House of Detention for Men. Specifically, Cook alleges that officials entered his cell while he was absent and seized his personal property without a valid warrant, in violation of rights guaranteed him under the Fourth, Fifth, Sixth and Eighth Amendments of the United States Constitution.[1] The matter is now before the Court on defendants' motion to dismiss the complaint in its entirety for failure to state a claim, or in the alternative, to dismiss the claims against particular defendants for lack of personal involvement.

The task of a federal court reviewing the sufficiency of a complaint is extremely limited. The court is not to inquire whether the plaintiff will ultimately prevail, but rather, whether the plaintiff is entitled to offer evidence to support his claims. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed unless, taking as true the allegations pleaded, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Egleston v. State University College at Geneseo,* 535 F.2d 752 (2d Cir.1976). Moreover, *pro se* pleadings are "held to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

Taking plaintiff's allegations as true, his complaint describes the following incident: On February 22, 1982, while plaintiff was away from his cell at the Bronx House of Detention for Men, two police officers bearing an undated and unsigned search warrant entered his cell and conducted a search. The policemen were escorted and supervised by two corrections officers. The warrant, accompanied by an affidavit, purported to authorize a search for a blue navy pea coat that plaintiff allegedly wore when he committed a robbery. The officers did not locate the coat, but seized from Cook's cell a telephone/address book containing the names, addresses and telephone numbers of witnesses he planned to subpoena for an upcoming criminal proceeding.

For the reasons set forth below, these allegations form an adequate basis upon which to impose liability on several of the named defendants. Therefore, plaintiff's complaint will not be dismissed.

Cook alleges first that his Fourth Amendment right to be free of unreasonable searches and seizures was violated by the defendants' failure to secure a valid warrant and, presumably, by their seizure of an item that was not named in the warrant presented. Defendants respond that they did not need a warrant to search his cell, and that the remaining allegations regarding seizure of plaintiff's property are too vague and conclusory to state a

---

**1.** These rights are applicable, of course, through the Due Process Clause of the Fourteenth Amendment.

claim upon which relief may be granted.[2] Having reviewed the pertinent authorities, I conclude that defendants are only partially correct.

■ It is well established that prisoners do not forfeit all of their constitutional rights by reason of their confinement. *See, e.g., Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Nonetheless, a state's undeniable interest in preserving internal order and discipline, maintaining institutional security, and pursuing legitimate penological goals justifies the imposition of significant restraints on traditional Fourth Amendment protections. *See, e.g., Bell, supra,* 441 U.S. at 556–57, 99 S.Ct. at 1883; *Hodges v. Stanley,* 712 F.2d 34 (2d Cir.1983); *United States v. Chamorro,* 687 F.2d 1, 3 (1st Cir.1982). In the prison or jail context, there is necessarily a decreased expectation of privacy,[3] and the federal courts have held that the Fourth Amendment does not require government officials to obtain a warrant or make a showing of probable cause prior to searching a prisoner's cell.

In *Bell,* for example, the Supreme Court upheld warrantless room searches at the Metropolitan Correctional Center, saying:

> No one can rationally doubt that room searches represent an appropriate security measure .... And even the most zealous advocate of prisoners' rights would not suggest that a warrant is required to conduct such a search.

441 U.S. at 557, 99 S.Ct. at 1883. *See also Chamorro, supra* at 4 ("We have found no cases suggesting that a warrant may be necessary to search a prisoner's cell. Whatever residuum of Fourth Amendment protection a prisoner has, it does not include the right to insist that a warrant be obtained before a search can be made. Such a requirement would handcuff prison officials in maintaining security and afford a prison cell the same sanctity as a home"); *United States v. Lilly,* 576 F.2d 1240, 1244 (5th Cir.1978).

■ In light of these authorities, I must conclude that a valid warrant need not have been secured before officers could search plaintiff's cell for a blue navy pea coat. The claim against defendant Laurence Lebowitz, based solely on his involvement with the issuance of the warrant in question, must therefore be dismissed, together with the claim against Bronx District Attorney Mario Merola, presumably based only on his supervisory role in the same activity.

■ In concluding that no search warrant was required, I by no means wish to intimate that prisoners are properly subject to any and all searches, regardless of the purpose or the degree of intrusion. Although prisoners "do not enjoy the full range of constitutional rights possessed by unincarcerated individuals, the Fourth Amendment still requires that searches—even those in the prison context—be reasonable." *Hodges, supra,* 712 F.2d at 35; *DiGuiseppe v. Ward,* 698 F.2d 602, 605 (2d Cir.1983). In other words, the search or seizure must be related to a legitimate government objective.

■ A prisoner has a protectable interest in items of personal property that he legitimately possesses, and this interest may be infringed if officials seize his property in an unreasonable manner or without

---

**2.** Defendants have also argued that the warrant was, in fact, signed and dated, and was therefore valid. However, this argument demonstrates defendants' misunderstanding of the nature of the present inquiry. Plaintiff's allegations are deemed to be true for purposes of a motion to dismiss for failure to state a claim, and exhibits submitted by defendants which purport to establish the validity of the warrant cannot properly be considered by the Court.

**3.** In *dicta,* the Supreme Court said in *Lanza v. New York,* 370 U.S. 139, 143, 82 S.Ct. 1218, 1220, 8 L.Ed.2d 384 (1962):

> [T]o say that a public jail is the equivalent of a man's "house" or that it is a place where he can claim constitutional immunity from search and seizure of his person, his papers, or his effects, is at best a novel argument.... Yet, without attempting either to define or to predict the ultimate scope of the Fourth Amendment protection, it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. In prison, official surveillance has traditionally been the order of the day. (footnote omitted.)

justification. *O'Conner v. Keller,* 510 F.Supp. 1359, 1360 (D.Md.1981); *Clifton v. Robinson,* 500 F.Supp. 30, 35 (E.D.Pa.1980) ("While prison guards need no probable cause before they are permitted to search a cell, a prisoner does have a reasonable expectation that the items of personal property legitimately in his possession will not be wantonly destroyed or confiscated absent some legitimate state purpose in doing so."); *DiGuiseppe v. Ward, supra,* 698 F.2d at 605 (Seizure of prisoner's diary in shakedown following riot was reasonable and therefore constitutional because prison security and inmate discipline mandated that authorities attempt to identify the ringleaders, and corrections officer concluded diary contained information regarding inmate participation).

 Viewed in light of these authorities, plaintiff's complaint undoubtedly states a claim. While the search warrant and affidavit attached to plaintiff's complaint were not constitutionally required, the information contained therein is useful because it tends to show the limited purpose for which the search of plaintiff's cell was undertaken. Apparently, the search was unrelated to maintaining security in the institution and was aimed solely at recovering the coat allegedly worn by Cook during a robbery. Plaintiff's allegation that the police seized not a coat, but a personal address book, is more than adequate to suggest a violation of Fourth Amendment rights.

Plaintiff has also alleged that the unjustified seizure of his address book amounted to a deprivation of his property without due process of law as well as cruel and unusual punishment, and that loss of the names and addresses contained in the book interfered with his ability to exercise his Sixth Amendment right of compulsory process. Defendants have declined specifically to address these claims in their motion to dismiss, and the Court declines, in turn, to speculate as to the basis of any arguments that might have been raised.

 The Court is prepared at this time, however, to dismiss the claims against various defendants who are not properly subject to liability under § 1983. As defendants correctly state in their memorandum of law, § 1983 liability cannot be imposed under a theory of *respondeat superior.* The complaint must allege the involvement of each defendant in the claimed constitutional deprivation. *See Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Cook's complaint states that police officers Paul Amundson and Ervon Ludvig searched his cell and seized his address book while under the escort and apparent supervision of Captain J. Lesser and Officer J. Rosado of the Department of Corrections. Such accusations are sufficient to allege the personal involvement of these four individuals.

 Plaintiff's complaint is insufficient, however, to state a claim against the remaining supervisory, agency and municipal defendants. Although liability can be imposed on supervisors and agencies under circumstances where an official policy, custom or pattern of inaction is implicated in the alleged deprivation, *see, e.g., Batista v. Rodriguez,* 702 F.2d 393, 397–98 (2d Cir. 1983), no such allegations appear in the complaint, and it appears unlikely that any basis for such a claim exists. Indeed, Cook expressly asserts, contrary to law, that the various defendants' liability stems from the *respondeat superior* doctrine. Because the complaint fails properly to allege their involvement in any deprivation of plaintiff's constitutional rights, this action is dismissed as against the City of New York, Mayor Edward I. Koch, the New York City Police Department, the New York City Department of Corrections, and Warden Vernon Baines. Plaintiff may, of course, seek to amend his complaint if he can demonstrate that a proper basis exists for imposing liability upon any of these defendants.

In accordance with the conclusions set forth above, the remaining defendants need not respond to any of plaintiff's interrogatories regarding the issuance of the search warrant. However, defendants are hereby ordered to respond as completely as possible to Cook's interrogatories and requests for production insofar as they probe events surrounding the actual search of his cell and seek disclosure of the names of poten-

tial witnesses. Disregarding all of plaintiff's references to the "invalid" warrant, defendants are directed to respond specifically to the interrogatories and production requests numbered 5, 8, 12, 13, 17 and 23.[4] In addition, defendants must respond to Interrogatory No. 18, plaintiff's request for citations to any rules or regulations governing police access to institutions run by the New York City Department of Corrections. Although this request for legal citations may fall outside the scope of traditional discovery devices, the information sought is relevant and the defendants are undoubtedly in a superior position to obtain it. Finally, defendants are ordered to respond to the best of their abilities to Interrogatory No. 20 insofar as it seeks justification for a lengthy period of delay between the time police allegedly became aware that Cook changed his clothes after the robbery and the time a search warrant for the blue coat was obtained. This information is relevant because it could tend to establish that the search for a navy pea coat was merely a pretext to obtain other things, such as the missing address book.

▮ Much of the information and many of the documents subject to disclosure under this Order are undoubtedly in the possession and control of the New York City Police Department, the Department of Corrections and the office of the Bronx County District Attorney. These agencies are now no longer parties to this action and would not ordinarily be subject to plaintiff's interrogatories and requests for production. However, in light of the individual defendants' close connections with these agencies and Cook's status as an incarcerated *pro se* litigant with limited resources, it seems unreasonable to demand that he comply strictly with the procedural requirements generally imposed on parties seeking discovery from third parties. Therefore, these agencies are directed to cooperate with the individual defendants in providing the necessary information and documents.

SO ORDERED.

---

4. The Court is not convinced that production of these documents would be unduly burdensome or that defendants made any attempt to comply with these requests prior to submitting their objections and complaints that plaintiff had not described the categories of items sought with reasonable particularity.

With regard to Interrogatory No. 12, defendants may not continue to rely on their assertion that the documents requested "may contain confidential material and may be privileged." Defendants' Answers to Plaintiff's Interrogatories at p. 4. They must either provide the documents to plaintiff or the District Attorney must assert the privilege and produce the documents for an *in camera* inspection.

With respect to Interrogatory No. 23, the date should be deemed corrected to read "22 Feb. 1982."